NEW-YORK GENERAL TERM, May, 1850.   *Edmonds, Edwards, and Mitchell,* Justices.

## THE SUN MUTUAL INSURANCE COMPANY *vs.* THE MAYOR, &c. OF THE CITY OF NEW-YORK.

Mutual insurance companies are liable to taxation on their capital, the same as other moneyed corporations. EDWARDS, J. dissented.

Such capital consists, in the first instance, of such amount of premiums as, by their act of incorporation, they are required to have subscribed before commencing business, and afterwards of such sums as they may accumulate from premiums earned, and other sources of profits, and which are used by them as capital, in the business of insurance.

THE plaintiffs were incorporated by an act of the legislature passed May 22, 1841, and went into operation during that year. Their net profits were as follows:

|  |  |
|---|---:|
| In 1842, | $ 86,260 |
| In 1843, | 166,610 |
| In 1844, | 195,180 |
| In 1846, | 267,480 |
| In 1847, | 200,171,83 |
| In 1848, | 395,231,32 |
|  | $1,310,933,15 |

In 1845 they sustained losses over and above the premiums earned, to the amount of   -  -   319,191,50

Making a total of profits to 1849, of  -   -   - $991,741,65

Their act of incorporation required that they should have ap-

plications for insurance to the amount of $500,000, before they began business; that the premiums paid by every member the first time he effected insurance, should never be withdrawn from the company except as they might be consumed in losses and expenses; and that whenever the accumulation of net profits should exceed $500,000, they might make dividends among the members, by redeeming the previously issued certificates of profits earned.

In 1848 they had assets as follows:

| | | | | | |
|---|---|---|---|---|---:|
| Bonds and mortgages, | - | - | - | - | $301,940,40 |
| Stocks and treasury notes, | - | - | - | | 403,557,00 |
| Cash, | - | - | - | - | - | - | 86,785,57 |
| Interest accrued on loans, | - | - | - | | 8,868,98 |
| Bills receivable, | - | - | - | - | - | 474,856,68 |
| Premium accounts, &c. | - | - | - | | 7,107,68 |
| Total assets, | - | - | - | | $1,283,116,32 |

In that year, in answer to a requisition made by the assessors, the company made a return that they had no real estate, and no capital stock, and claimed not to be liable to any taxation. They were, however, assessed the sum of $128,858,50, for personal estate, on which their tax was $1389,09. Refusing to pay the tax, a warrant was issued and their property levied on. The company then filed their complaint, claiming that they were not liable to taxation, and praying a perpetual injunction. A preliminary injunction was granted, and a motion made at a special term of this court held by Justice Edwards, to set it aside.

The following opinion was delivered at the special term:

"EDWARDS, J. The question which is presented to me by the statement of facts agreed upon by the parties, is, whether the accumulated net profits upon insurances, which are now remaining in the hands of the Sun Mutual Insurance Company, or which have been invested by it, are taxable as against the company under the provisions of the revised statutes.

By the ninth section of its charter of incorporation, the company is bound, during the first month of every year, to cause an

estimate to be made of the profits and true state of the affairs of the company for the preceding year, and to cause a balance to be struck, in which each member is to be charged with a proportionate share of the losses of the company, according to the original amount of premium paid by him; but in no case is such share to exceed the amount of such premium. It is also provided, that each member shall be credited with the amount of said premium; and also with an equal share of the profits of the company, derived from investments in proportion to the amount; and that each member shall thereupon be entitled to a certificate on the books of the company, of the amount remaining to his credit in the said company, such certificate to contain a proviso that the amount named therein is liable for any future loss by said company. (*Laws of* 1840, 261, § 9.) By section seven of the charter, a provision is made for the investment of the premiums received by the company. (*Id.* § 7.) It is also further provided, that whenever the accumulation of net profits shall exceed half a million of dollars, the excess may be applied, from year to year thereafter, towards the redemption of each year's certificates, successively, in whole or in part; but the certificates of a subsequent year shall not be redeemed until those of preceding years are provided for. (*Laws of* 1840, 262, § 11.)

It appears that the only property which is held by the company consists of premiums received by it, and of profits arising from the investment of such premiums; and that whatever remains in the shape of profits, in striking the annual balance, whether arising from premiums or investments, is credited to the members of the company, and that certificates are delivered to them *pro rata*, declaring that they are entitled to an amount therein particularly specified, in the invested funds of the company. It will be seen that the profits all belong to the members of the company. They, according to the certificates delivered to them, are entitled to a portion of the invested funds equal to their share of the profits. The objects of the company, however, render it necessary that the profits shall remain in its possession; hence, there is a provision in the charter that no premium paid

The Sun Mutual Ins. Co. *v.* The Mayor, &c. of New-York.

shall ever be withdrawn, but shall be liable to all the losses and expenses incurred by the Company during the continuance of its charter. But, although these funds remain under the control of the company, and are invested by it, still they are not owned by it. On the contrary, the certificates which are delivered to the members, and which represent all the funds, declare that the holders of the certificates are entitled to such funds. These funds are in the nature of deposits, which are held by the company, and upon which it pays interest, unless in case of loss, the amounts deposited with, and invested by it, shall be required for the payment of losses. There can be no doubt that the funds thus held by the company are taxable; the only question is in what shape, or in other words who is taxable for them? It seems to me clearly that they are not taxable as against the company under the provisions of the statute which declares that "all lands and personal estate within this state, whether *owned* by individuals or by corporations, shall be liable to taxation." (1 *R. S.* 387, § 1.) They are not taxable as against the company under this section of the statute, because they are not *owned* by the company. They are held by the company, but they belong to the members holding the certificates of the company.

But, it is contended that although not taxable as personal estate owned by the company, they are taxable as capital stock, under the provision of the statute which declares that "all moneyed or stock corporations, deriving an income or profit from their capital or otherwise, shall be liable to taxation on their capital, in the manner hereinafter prescribed." (1 *R. S.* 414, § 1.)

The next question to be considered, then, is whether the funds held by the company are capital stock.

By the second section of the statute which provides for the taxation of incorporated companies, it is declared that the proper officer of the company shall make out a written statement, specifying the real estate of the company, *and the capital stock paid in and secured to be paid in,* excepting therefrom the sums paid for real estate, and the amount of such capital stock held by the state, and by any incorporated literary or charitable in-

stitution. The sixth section contains further provisions as to the manner in which the assessment roll shall be made out. (1 *R. S.* 414, 415.) Under these provisions of the statute, it was held in the case of *The Bank of Utica* v. *The City of Utica,* (4 *Paige,* 399,) that a corporation which is liable to taxation upon its capital, can not be taxed for its surplus profits remaining on hand and undivided. They are not capital stock paid in, or secured to be paid in. · In the case of *The People* v. *The Supervisors of Niagara,* (4 *Hill,* 20,) the case of *The Bank of Utica* was cited with approbation ; and the rule is laid down, that in taxing capital stock, no respect is paid to accumulations or losses in the course of the business of the company. In the case of *The Farmers' Loan and Trust Co.* v. *The Mayor, &c. of New-York,* (7 *Hill,* 261,) the court for the correction of errors held the same doctrine.

Now, if the company had been organized by the subscription of the capital stock in the usual manner in which a stock company is established, and there had been an undivided surplus arising from the premiums received, such surplus would clearly not be taxable as capital stock within the principle established in the cases above cited. Such being the case, it is not easy to see how accumulations arising from the same source shall be taxable as capital stock in the case of a company formed upon the principles of mutual association, and where no capital stock is subscribed.

It was contended on the argument, that the provision contained in the eleventh section of the charter, for the redemption of certain certificates after the accumulations of the net profits shall exceed half a million of dollars, creates a capital stock. This view was evidently founded upon a misconception of the effect of the section referred to. It will be seen upon an examination of this provision of the charter, that it does not leave any portion of the invested funds unrepresented by the certificates. On the contrary, the certificates issued in each year must represent the whole amount of the funds held by the company, after the payment of losses and expenses.

The conclusion, then, to which I have arrived, is, the accu

The Sun Mutual Ins. Co. *v.* The Mayor, &c. of New-York.

mulated profits held by the company are not personal estate owned by it, within the meaning of the statute; nor are they capital stock for which the company is liable to taxation.

By the amended act of 1844, it is declared that all certificates and interest in the company shall be deemed personal property, (*Laws of* 1844, 66, § 2,) and as such they will be taxable as against the individuals, members of the company, who hold them, so far as they represent property which is in itself taxable; or in other words, the funds held by the company are taxable as against the holders of the certificates, and not as against the company."

The motion to set aside the preliminary injunction was therefore *denied,* and the defendants appealed to the general term.

*W. Kent,* for the appellants.

*H. Ketcham,* for the respondents.

EDMONDS, P. J.    The defendants are a corporation, created as such by a special act of the legislature, passed May 22, 1841, and as such are entitled to hold, purchase, and convey such real and personal estate as the purposes of the corporation may require.  (1 *R. S.* 599, § 1.)  And it appears, that in 1848 they owned no real estate, but owned an amount of personal property exceeding a million and a quarter of dollars, which consisted of bonds, mortgages, stock, cash, bills receivable and accounts uncollected, and were assessed that year for personal estate, and taxed for $128,858,50.  They claim an exemption from such taxation, on the ground that they are not the owners of that property; it belonging, as they alledge, to the members of the corporation, and not to the corporation itself, and that therefore it is not taxable as personal property; and on the ground that, as they have no capital stock, but are a mutual insurance company, their assets are, in no respect, taxable as capital.

The question is a grave one, because, as the amount which such a company may accumulate as its real or personal property, is unlimited by any provision of the statute, so long as it

may be required for " the purposes of the corporation," the claim of these plaintiffs, if well founded, might soon virtually exempt many millions of dollars from taxation.

The case presented to us is very imperfect in one respect; it does not show whether the assessment was on personal estate owned by the plaintiffs, or on their capital stock, nor why the sum of $128,858,50 was selected out of its million and a quarter as alone liable to taxation. So too, the statement of facts agreed upon is imperfect, for it ends by submitting to the court the question whether the company is liable " to taxation for any amount of its personal property ;" while the answer insists that the plaintiffs had a capital stock of $500,000 and upwards, liable to taxation, and had profits on hand to the amount of $128,-858,50 liable to taxation as the property of the company.

Perhaps, on this motion, this ambiguity is not very material, because if the plaintiffs are liable to taxation in either respect, the injunction must be dissolved. But it therefore becomes necessary that we should examine whether they are liable to taxation in either respect.

I will first examine whether they are liable as the owners of real or personal estate.

The idea of their exemption is founded on the argument that all this large amount of property in their possession does not belong to them, but to the members of the corporation, who alone are liable to taxation for it. The argument is derived from the consideration that their property is the product only of premiums received and interest on the investment of them, and is credited on the books to the different members of the company, to whom certificates of ownership are delivered, &c. I confess I do not perceive how this differs materially from the ownership of a share in a bank, or any other corporation having a fixed amount of capital stock. The shareholders, in such cases, are credited on the stock ledger with the amount of stock which they own, and they receive certificates of such ownership, which are transferable as these are, only on the books of the company. The only difference is that in one case each share is of a like fixed amount, while in the other case the shares are of different and

unlike amounts.   In one case the whole sum is perhaps $100,000 divided into 1000 shares of $100 each, and in the other it is $100,000 divided into 999 shares, which respectively range in amount according to circumstances, from $10 each to $900, or any other sum.   But this does not change the fact of ownership.   It divides the interest—the ultimate benefit—unequally among the members, but until such ultimate division, and in the meantime, such inequality of interest does not affect the legal ownership.   There is perhaps another difference, though it seems to me it is one of form rather than of substance.   The certificates to members, in the case of these mutual companies, specify on their face that when the losses and expenses of a year exceed the premiums earned, the deficiency is to be made up from the sums which these certificates represent.   This is precisely the effect in one of the old fashioned companies, though not expressed in the certificates of stock; if the losses exceed the profits, the deficiency is to be made up from the capital, and by just that deficiency are the certificates in both cases diminished in value.   Neither does this affect the legal ownership of the amount which these certificates represent.   It may affect and constantly vary the amount of the interest which the members of the companies in both cases may ultimately have in them, but in the mean time the legal ownership in both cases is in the corporation, which in all instances is the trustee for those beneficially interested—holding the property for them in the end, after all liabilities are discharged.

The argument that the property does not belong to the company, because its members are beneficially interested in it, have the amount of their interest entered on the books of the company, and hold it subject to a depreciation and perhaps a total loss by reason of losses by the company, is just as good in the case of an incorporated bank or a free bank, or a railroad or manufacturing company, as it is in the case of a mutual insurance company.   I can indeed imagine no moneyed corporation to which it would not be equally applicable.   If the argument is well founded, what is the use of a corporation at all?   The argument is that it is the members of the company and not the company

itself, in whom is vested the legal ownership.  Let this be granted, and then why any incorporation?  All these members would be joint owners; in their names all suits must be brought for any injury to the common property; if any one of them should die, his heirs or next of kin or personal representatives must take his place in such joint ownership, and so on to the end of the chapter.

If it is true of the personal property which has been assessed for taxation in this instance, it must be equally true of all its property, for all is equally the product of premiums or interest earned; all is equally held for the benefit of the. members, and all is equally liable to losses.  So that, if the constable had seized the office furniture for purposes of destruction, instead of levying a tax, what is it to these plaintiffs?  They are not the owners. If a wrongdoer embezzles and carries off their bonds and mortgages or state stocks, what is it to the company?  They are not the owners.  But it is useless to run out the argument farther. A moment's consideration of its nature and consequences must, it seems to me, show its fallacy.  The very purposes of having an incorporation are to have the legal title to all its property vested in a legal person, who can hold, purchase and convey, free from the embarrassments which death or transfer among its numerous members would create.  And if for any purpose the company is to be regarded as the legal owner, it must be for all purposes; and that, in the very nature of things, whatever may be the beneficial interest of the members.

The mistake which the plaintiffs make in this respect arises out of the erroneous view which they take of the 9th section of their act of incorporation.  They point to that section as the evidence that the members, and not the company, are the owners of the assets which by their good management has been accumulated.  Such is not the purpose of that section, nor its effect. Every person taking a policy is a member of the company. For how much and to what extent?  Not as in the former companies, for so many shares at a fixed amount, but for the amount of premium which he pays, be it more or less.  To that amount he is entered on the books as a shareholder, and that amount is liable to be augmented by his being credited with his pro

rata share of profits derived from investments, and to be diminished by being charged with his proportionate share of losses. So that the purpose of this section is to ascertain and fix the amount of his interest as a shareholder, and not to transfer to him in common with the other members the legal ownership of the property, or any part of it. That legal ownership he can not have, except as dividends are declared, until the final dissolution of the company. In the meantime, the company in its corporate capacity is for all purposes the legal owner, invested with all the rights appurtenant to such ownership, and charged with all the burdens and obligations resting upon it.

It does not, however, necessarily follow from such ownership that the company in its corporate capacity is liable to taxation in respect thereof. That depends on other considerations, which I next turn to examine.

The statute (1 *R. S.* 387, § 1) subjects all personal estate, whether owned by individuals or corporations, to taxation, unless exempted by the statute ; and the personal estate of a corporation is not exempt, where the company is liable to taxation on its capital. (*Id.* § 4,) This naturally brings us to the consideration of the remaining question, namely, whether these mutual companies have any capital on which, under the statute, a tax can be imposed ?

All moneyed corporations deriving an income or profit from their capital, or otherwise, are liable to taxation on their capital. (1 *R. S.* 414, § 1.) A moneyed corporation is defined, among other things, to be one authorized by law to make insurances ; (1 *R. S.* 598, § 61 ;) and it has been held that income and profits, as used in this statute, mean that which comes in or is received from any business or investment of capital, without reference to the outgoing expenditures. (*People* v. *Supervisors of Niagara,* 4 *Hill,* 20.) So that these plaintiffs are a corporation, within the purview of this statute, if they have any capital.

Taking the expression in the sense in which it is used in common conversation, some surprise might naturally be excited that the astute and sagacious merchants of this city should be so ready to make contracts of insurance to large amounts with

a corporation which insists that it has no capital. But it might be regarded as being too critical to take that view; and after all, the true question is whether the company has any capital in the sense in which the statute uses the word.

It is undoubtedly true that at the time the revised statutes were enacted, almost if not quite all the companies which constituted, in the language of a late chief justice, " the brotherhood of corporations subject to taxation," had capitals fixed and settled in amount by their several acts of incorporation. They were, as respects taxation, divided into two classes; one where the tax was imposed on the amount of the capital stock, where no valuation was to be made and no discretion exercised, but the amount was settled by arithmetic, and the other where the cash value of the stock was to be taken, where an estimate was to be made and some discretion exercised. (*Farmers' Loan Co.* v. *New-York,* 7 *Hill,* 265.) Banks and insurance companies were in the first class, and were taxable on this fixed amount of capital, without any reference to diminution in value by losses, or an increase of value by a carefully saved surplus. (*Id. Bank of Utica* v. *City of Utica,* 4 *Paige,* 399.) Mutual insurance companies must rank in the same class, if included at all within the statute, because the second class is confined to manufacturing and turnpike corporations.

The argument is that these mutual companies have no capital and therefore are not liable to taxation.

I apprehend that this is a mistaken view of the case, and that they have capital within the meaning of the statute, though in some respects attended with characteristics different from those which marked the old fashioned companies. Thus, in the other companies, the whole amount of the capital was limited to the sum mentioned in the act of incorporation, but in mutual companies it is unlimited in amount, and may be swelled up to any sum which they may earn and lay by for the purposes of their business. In the former, the shares were all of an equal amount with each other, and an inequality of interest could be brought about only by a member's owning a greater or lesser number of shares. But in the mutual companies the amounts

of the respective shares may be unequal in the outset, depending as they do solely on the amount of premium which may be paid. Except in these two respects I can discover no difference in the two kinds of companies, as to their capital. In both, the ownership of a share constitutes membership; each share has a vote; is property belonging to the member; is transferable; is liable to augmentation or diminution in value by losses or gains in the corporate capacity; and is entitled to have dividends declared upon it. Every element ever entering into a share of stock in any corporation, does, it seems to me, enter into a share in a mutual company.

There is, it is true, another difference, but it in no way affects this question. I allude to the manner in which the capital is made up. In one case it is made up by a subscription of so many shares towards the specified amount of capital. In the other it is made up by applications for insurance, and premiums paid thereon. The only essential difference being that in the latter case the subscriber has a right to an insurance for his money, as well as to membership. But the amount thus subscribed is in both cases capital; it is that which the members have invested in the business of insurance; which is to remain unimpaired by any thing but losses, and is that out of which profits are to be made. This, it appears to me, is clearly the intention of the statute. The 4th section of the act of incorporation forbids the company's going into operation until applications for insurance to the amount of $500,000 shall be received; the company thus starting into life with a capital consisting of the premiums paid on that amount of insurance. To guard against a diminution of that amount of capital, it is provided that the premium on every first insurance shall never be withdrawn from the company in the shape of dividends; and to accumulate and preserve an adequate amount of capital it is further provided that no dividend shall be paid until its net profits shall exceed half a million of dollars. So that though this company may have commenced business with a capital of only some $50,000, it was compelled by its charter to accumulate its earnings till they amounted to $500,000, and may accumulate until

they shall amount to ten times that sum or more. And that which is thus accumulated may be invested in bonds and mortgages and stocks, as the capitals of other insurance companies were allowed to be invested.

The capital thus created, invested and preserved, has every element and every characteristic of the capitals of the old fashioned companies. It has however one additional advantage, not in any respect changing its character, but increasing its liability to taxation; I mean its power of augmentation to an unlimited amount. In this respect there is no limit, and year by year as the balance is struck and the excess of premiums earned and interest on investments over losses is carried to the credit of the members, the capital would seem to be increased, until, (unless it shall be reduced by dividends,) it may amount to millions. Thus, it appears in this case, that the capital of this company has been constantly increasing since its organization, so that in 1848 their total profits were $992,741,65, and at the end of that year they had, besides the dividends which they had declared, assets to the amount of $1,283,116,32. Why is not the whole amount of that sum capital, or at least so much of it as has been passed to the credit of the members on the books of the company and for which certificates have been issued? It is unnecessary to answer that question here; nor do I mean to pass upon it. It is enough for the purposes of this motion to ascertain whether the company has any capital liable to taxation. It is unnecessary here to inquire how much it has, any farther than to know that it has at least as much as has been assessed in this case. If it has any capital, it will be conceded that it has that amount at least; and that it has a capital, within the meaning of the statute, to at least the sum of $500,000, I entertain no doubt.

Therefore the order of the special term ought to be reversed, and the injunction be dissolved.

MITCHELL, J. concurred.

EDWARDS, J. dissented.

Ordered accordingly.