The People *ex rel.* Ithaca Savings Bank agt. Beers *et al.*

## SUPREME COURT.

THE PEOPLE *ex rel.* ITHACA SAVINGS BANK agt. SAMUEL BEERS *et al.*, assessors of the town of Ithaca.

*Taxes and assessments — Savings banks — How and in what manner to be taxed — When uninvested cash not liable to assessment and taxation.*

In a proceeding to test the validity of an assessment levied upon a savings bank, it appeared by the oath of its treasurer that on July 1, 1883, its surplus was $48,252.04, and that the whole of its surplus was invested in government bonds. It had the sum of $97,750 invested in such bonds. On July 1, 1883, the bank had on deposit in the First National Bank of Ithaca the sum of $46,978.19. The money so deposited was shown to have formed a part of the assets of the bank, but no part of its surplus. It was also shown that the bank had no other personal property liable to taxation. No United States bonds were purchased by the bank from January 1, 1883, to July first of that year. During that time the bank's surplus had increased about $1,750, and during all this time the bank had United States bonds to an amount largely in excess of its surplus:

*Held, first;* that as the statute under which the bank was incorporated did not authorize it to hold property consisting of money, goods or other property to be employed by it in conducting the business of the corporation, and which could not be withdrawn or divided among its members, it cannot be held that the bank had any capital, or that the money it had in the First National Bank uninvested was taxable under the provisions of the Revised Statutes.

Prior to the statute of 1857 (*Laws of* 1857, *chap.* 456, *sec.* 4) the money deposited in savings banks was taxable as the personal property of the depositors, but since that statute a *savings bank* cannot be taxed on such deposits.

When a repealing statute is itself repealed, the first statute is revived. When the legislature in 1882 repealed the statute of 1875, which repealed the act of 1867, the statute of 1867 was revived and came into full operation again.

Under the statute of 1867, if the surplus of the savings bank was not invested in United States securities, the assessors had authority to assess the bank for its privileges and franchises as personal property, to the extent of its surplus not so invested. But this bank had the whole of such surplus invested in such securities, and therefore had nothing which was liable to taxation under the statute.

Before it can be held that there is a surplus in the hands of a savings bank, which is liable to assessment and taxation under the statute of 1867, there must be deducted from the total assets of such bank, first, the amount of all the just debts owing by it, and second, the amount of its assets which are actually invested in United States securities, and the remainder, after making both of these deductions, is the only surplus which is the subject of assessment and taxation.

*Cortland Special Term, October,* 1883.

*Mynderse Van Cleet,* for relator.

*P. G. Ellsworth,* for respondent.

MARTIN, *J.*— The relator is a savings bank duly incorporated by the laws of this state (*Chap.* 176, *Laws* 1863; *chap.* 94, *Laws* 1864, *and chap.* 141, *Laws* 1868). The respondents are the assessors of the town of Ithaca, N. Y. In the year 1883 the respondents assessed the relator for "cash in bank uninvested, $15,000." On the 21st day of August, 1883, in pursuance of the notice given by the assessors, the relator appeared before them, objected to such assessment on the ground that it was unjust, illegal, and without jurisdiction, and asked to have said assessment stricken from the assessment roll. The treasurer of the relator then made oath before the assessors that on the first day of July, 1883, the total assets of the relator were $558,368.37; that its total liabilities were $510,116.33; that its surplus on that day was $48,252.04, and that the whole of such surplus was invested in United States government bonds. It had the sum of $97,750 invested in such bonds. On July 1, 1883, the relator had on deposit in the First National Bank of Ithaca the sum of $46,978.19. The money so deposited was, by the affidavit of its treasurer, shown to have formed a part of the assets of the relator, but no part of its surplus. It was also shown, by the oath of its treasurer, that the relator had no other personal property liable to taxation. No United States government bonds were purchased by the relator from January 1, 1883, to July first of

that year. It appeared from the affidavit of said treasurer that during that time the relator's surplus had increased about $1,750. The relator was shown to have had during all of this time United States government bonds to an amount largely in excess of its surplus. The respondents refused to strike such assessment from the roll. The correctness of this assessment is challenged by the relator, and that question is brought before this court upon the return of the respondents to a writ of *certiorari*, issued out of this court under and in pursuance of the provisions of chapter 269 of the Laws of 1880.

The question here presented then is, had the respondents the right to assess the relator upon its cash in bank which was uninvested. Was such uninvested cash liable to assessment and taxation. It will hardly be contended, I apprehend, that this money in the hands of the relator, or rather under its control, was liable to assessment and taxation unless it was so made liable by some special or general law. The respondents contend that it was liable to taxation under and by virtue of the general provisions of the Revised Statutes. The provisions of the Revised Statutes, so far as they are claimed to be applicable to this question, are as follows:

"All lands, and all personal estate, within this state, whether owned by individuals or by corporations, shall be held liable to taxation, subject to the exemptions hereinafter specified" (*R. S.* [*7th ed.*], 981, *sec.* 1).

"The term personal estate, whenever it occurs in this chapter, shall be construed to include all moneys, debts due from solvent debtors, whether on account, contract, note, bond or mortgage" (*R. S.* [*7th ed.*], 982, *sec.* 3).

The defendant is clearly a corporation, and the cash deposited in the First National Bank was clearly within the above definition of personal estate. Therefore, unless the property under consideration is subject to some of the exemptions referred to in the above statute, there would seem to have been in this statute sufficient authority for the respondents to make the assessment complained of.

But the following exemption is created by the same statute: "The following property shall be exempt from taxation, * * * the personal estate of every incorporated company not made liable to taxation on its capital in the fourth title of this act" (*R. S.* [*7th ed.*], 982, *sec.* 4). Title 4 of said act provides that "all moneyed or stock corporations deriving income or profits from their capital, or otherwise, shall be liable to taxation *on their capital* in the manner hereinafter prescribed" (*R. S.* [*7th ed.*], 1036, *sec.* 1).

The foregoing exemption is a general one and applies to every incorporated company which is not made liable to taxation *on its capital* by the fourth title of the statute above quoted. Hence, if an incorporated company has no capital, it would, under the foregoing statutes, be exempt from taxation upon its personal estate. The statutes under which the relator was incorporated nowhere give it the right to issue any stock, or to hold any capital as such. The general law gives it no such right. The theory of the law under which savings banks are incorporated is, that such banks are to possess no capital. They are simply to receive deposits, and to invest the same so that the depositors (who are supposed to be persons of limited means, and who generally deposit but small amounts), shall receive an income from the money so deposited. It is the duty of such a bank to so regulate the rate of interest to be allowed depositors, that they shall receive, as nearly as may be, a ratable proportion of all the profits of such corporation, after deducting expenses. Before a corporation can be said to have a capital, within the meaning of this statute, it must be authorized to hold property, consisting of money, goods or other property to be employed by it in conducting the business of the corporation, and which cannot be withdrawn or divided among its members. No such authority existed here.

I do not think that it can be held that the relator had any capital, or that the money it had in the First National Bank, uninvested, was taxable under the provisions of the Revised

NEW YORK PRACTICE REPORTS          223

The People *ex rel.* Ithaca Savings Bank agt. Beers *et al.*

Statutes (*The Mut. Ins. Co., of Buffalo* agt. *The Board of Supervisors,* 4 *N. Y.*, 442; *The Sun Mut. Ins. Co.,* agt. *The Mayor of New York,* 8 *Barb.*, 450; *S. C.*, 8 *N. Y.*, 241; *People ex rel. Ins. Co.,* agt. *Supervisors of New York,* 20 *Barb.*, 681; *S. C.*, 16 *N. Y.*, 424).

Assuming the correctness of the foregoing conclusion, and the question arises whether the money deposited in these banks can in any way be reached for the purpose of taxation. Prior to the statute of 1857 the money thus deposited was doubtless taxable as the personal property of the depositors.

The legislature, however, in that year passed an act providing that "the deposits in any savings bank which were due depositors * * * shall not be liable to taxation, other than the real estate and stock which may be owned by such bank or company, and which are now liable to taxation under the laws of the state" (*Laws* 1857, *chap.* 456, *sec.* 4).

Under this act a question has arisen as to whether such depositors can still be taxed upon their deposits. Upon that question there seems to be a conflict of opinion. The attorney general of the state in 1869 was of the opinion that such depositors were still liable to taxation, while others have held the contrary doctrine. But all have, I think, concurred in holding that since that statute a *savings bank* could not be taxed on such deposits. That is all that is necessary to hold in this case.

While such was the law of this state the legislature passed an act providing that the franchises and privileges of savings banks should be deemed personal property for the purpose of taxation, and that they should be liable to taxation to the extent of their surplus (*Laws* 1866, *chap.* 761, *sec.* 7). In 1867 this provision of the statute was amended so as to read as follows: "The privileges and franchises granted by the legislature of this state to savings banks or institutions for savings are hereby declared to be personal property, and liable to taxation as such in a town or ward where they are located, to an amount not exceeding the gross sum of their surplus earned

(after deducting the amount of such surplus invested in United States securities), and the officers of such banks or institutions may be examined on oath by assessors as to the amount of such surplus and securities, and the property of such banks and institutions shall be liable to seizure and sale for the payment of all such taxes assessed upon them for said privileges and franchises " (*Laws* 1867, *chap.* 861, *sec.* 1).

By the passage of this act the legislature seemed to recognize the fact that there was then no law by which the property of a savings bank could be made liable to taxation. By property I mean the surplus in the hands of such bank beyond the sum due its depositors. The legislature deemed it proper that such surplus should be liable to taxation, and hence the law of 1866, amended in 1867. Under this law a savings bank was liable to taxation for its privileges and franchises, which were declared to be personal property to the amount of its surplus, unless such surplus was invested in United States securities. Before the amendment of 1867 the relator would have been liable under the statute of 1866 to assessment and taxation on its privileges and franchises, notwithstanding the fact that its surplus was invested in United States securities ( *Monroe Savings Bank* agt. *City of Rochester,* 37 *N. Y.,* 365).

By the amendment of 1867, the surplus which was thus invested, was to be deducted from the amount of such surplus, and the remainder only was the subject of assessment and taxation. It follows, I think, that if the whole of such surplus was so invested, then the privileges and franchises were exempt from taxation.

But in 1875 the legislature passed a general act to conform the charters of all savings banks and institutions for savings to a uniformity of power, rights and liabilities, and to provide for the organization of savings banks, for their supervision, and for the administration of their affairs, and by section 56 of that act expressly repealed the foregoing statutes of 1866 and 1867.

The statute of 1875 made no provisions whatever in relation to the liability of savings banks to taxation, and consequently by the repeal of the statutes of 1866 and 1867, the state was again left without any statute relating to this subject.

The law so remained until 1882, when the act of 1875 was repealed. Thus the act which repealed the statute of 1867 was itself repealed. This presents the question as to the effect of the repeal of the statute of 1875. It seems to be well settled that when a repealing statute is itself repealed, the first statute is revived (*Wheeler* agt. *Roberts*, 7 *Cow.*, 356; *People* agt. *Davis*, 61 *Barb.*, 457; *Churchill* agt. *Marsh*, 2 *Abb.*, 225; *Vanderberg* agt. *Village of Greenbush*, 66 *N. Y.*, 1; *People* agt. *Supervisors*, 67 *N. Y.*, 17).

Under these authorities it must, I think, be held that when the legislature in 1882 repealed the statute of 1875, which repealed the act of 1867, that the statute of 1867 was revived and came into full operation again. Therefore, the question in this case must be decided under the statute of 1867. If the surplus of the relator was not invested in United States securities, the respondents had authority under that statute to assess the relator for its privileges and franchises as personal property to the extent of its surplus not so invested.

But, by the affidavit produced by the relator, it appeared that the whole of such surplus was on July 1, 1883, actually invested in such securities. If this be true, then the relator had nothing which was liable to taxation under that statute, and the motive which induced such investment can in no way affect the result. If it were to be conceded that this surplus was so invested to prevent taxation, still the law remains the same and the relator would be entitled to its exemption (*People ex rel.* agt. *Ryan*, 88 *N. Y.*, 142).

It is, however, contended by the respondents that as it appeared by the affidavit furnished by the relator that its surplus increased about $1,750 from January to July, 1883, and that no United States bonds or securities were purchased

during that time, therefore so much at least of its surplus was subject to taxation.

I do not think that this contention of the respondents can be sustained. I am of the opinion that before it can be held that there is a surplus in the hands of a savings bank which is liable to assessment and taxation under the statute of 1867, there must be deducted from the total assets of such bank, first, the amount of all the just debts owing by it (*R. S.* [*7th ed.*], 991, *sec.* 9) ; and second, the amount of its assets which are actually invested in United States securities (*People ex rel.* agt. *King et al., MSS., Sp. Term*, 2*d Dist.*, BARNARD, *J.; The People* agt. *Commissioners of Taxes and Assessments*, 41 *How.*, 459); and that the remainder, after making both of these deductions, is the only surplus which is the subject of assessment and taxation.

If I have correctly determined the rule to be applied in making assessments under that statute, then it follows that the respondents had no authority to make the assessment complained of, and it should be stricken from the assessment-roll (*Matter of Savings Bank*, 20 *Hun*, 481).

Application to strike the relator's assessment from the roll granted, without costs to either party.

Relator's attorney will prepare the proper order in accordance with the foregoing opinion, and send to me for certification.