## SEAMAN *vs.* BENSON and others.

Under the power given to the trustees of school districts, by the revised statutes, to renew warrants for the collection, from delinquents, of such taxes and assessments as remain unpaid, they have the power to issue *a new warrant* for that purpose.

If a warrant is issued by trustees of a school district, for the collection of a greater sum from an inhabitant of the district, for a school tax, than is due from him, upon which his property is taken and sold, his remedy is not by an action of trespass or trover, but in case, for the injury sustained ; or in assumpsit against the trustees, for the excess of moneys in their hands, arising from the sale, over and above what is sufficient to pay the amount due.

Where defendants, in an action of trover, seek to justify under rate-bills and war-

Seaman *v.* Benson.

rants issued by trustees of a school district, they must produce the rate-bills and warrants, if in their possession ; and cannot give parol evidence of their contents ; provided the objection is taken at the proper time.

But where the plaintiff himself gives parol evidence of the contents of the rate-bills, and warrants, and allows the defendants to cross-examine his witnesses, upon that subject, without objection, it is too late, after the close of the evidence and after the cause has been submitted on the part of the defendants, for the plaintiff to object that the defendants cannot rely upon such rate-bills and warrants, as a justification for the trover and conversion, for the reason that the defendants have not produced them.

ERROR to the Cortland common pleas. Seaman sued Benson, Dwight and Tillinghast, as trustees of school district No. 4 in Cincinnatus, in an action of trover, for the conversion of a cow. The defendants pleaded the general issue, and justified the taking of the cow by a collector of the school district as such collector. James Richards testified that he was collector of the school district ; that he received four warrants from the trustees, and collected the warrants except a few names. That he collected a tax against Seaman, the plaintiff. That the warrants were not in his possession ; they having been left with the trustees when he paid the money over. The plaintiff having proved the service of a notice upon the defendants, requiring them to produce the warrants, and the warrants not being produced, the witness further testified that one of the rate-bills contained a tax against Seaman for the winter school of 1843 ; that in one of the bills a wood-bill was included ; that he called on the plaintiff and collected the full amount of both bills by the sale of a cow in his possession ; that the bill contained the wood-bill in a separate column, and was apportioned according to the number of days sent. That these warrants came to the witness' possession about the 1st of December, 1843 ; that they tried to collect the bill for the summer of 1842, but could not ; that the witness paid some on the plaintiff's bill on condition he paid it to Mr. Benson, one of the defendants, the then collector ; that the old bills were returned by the old trustees, to the defendants, the new trustees ; that the defendants made out new bills and warrants against those who had not paid, and handed them to the witness as collector ; that the

plaintiff's name was on the bill, and nothing endorsed as paid. That the bills the witness collected the money on, were made out the 2d, 3d or 4th day of December, 1843, to collect teacher's wages, and wood for the summer of 1842 and the winter of 1843; that those bills were for collecting back bills or arrearages which had been returned by the old collector, to the old trustees, and by them to the new trustees. That the witness called on the plaintiff and asked him if he wanted to get his wood; he said he did not care any thing about it; that the wood was afterwards procured by Short, one of the trustees; witness was then a trustee; he called on the plaintiff soon after the bills came to his hands as collector, and the plaintiff said he could not pay them; that he called a second time, and the plaintiff then turned out a cow on the warrants, on condition that the witness would give him the length of the warrants to pay the money; the plaintiff wanted to get some other property to turn out, in place of the cow, but did not. Witness gave the extent of the warrant except one day; that he advertised the cow on the 9th, and sold her on the 29th of December, 1843. The plaintiff looked over the bills, and said they were right, and he would pay them; that the money that had been paid on the plaintiff's bill was to be paid back if it could be collected of the plaintiff. Z. McWhorter, another witness for the plaintiff, testified that he paid a portion of the plaintiff's bill, on condition that it should be paid back to him if it could be collected of the plaintiff; and after the sale of the plaintiff's cow, the money was refunded to him. At the close of the testimony, the cause was submitted upon the following points. On the part of the plaintiff, it was insisted that a payment of a part of the original rate-bill, by others, operated to the benefit of the plaintiff, and could not be collected again; it being virtually an exemption, as to him. That the wood bill was improperly included in the rate-bill; and that the defendants had no authority, as trustees, to issue new bills and warrants, on a return of the old bills and warrants; and that in doing so, they acted without jurisdiction. That the defendants, not having produced the rate-bills and warrants, and other proceedings

necessary to give them jurisdiction, had failed to show any jus-
tification, and were therefore trespassers.   And that any use,
by them, of the property, was a conversion.   The defendant's
counsel insisted that the payment of a part of the rate-bills, by
others, being merely conditional, would not justify a recovery in
this action.   That the tax for the wood was legal; the plaintiff
having been called on to get his wood, and refusing or neglect-
ing to furnish it; and that the trustees had a right to issue the
warrant.

The justice rendered a judgment in favor of the plaintiff for
$10 damages and $2,66 costs.   The cause having been re-
moved to the common pleas, by certiorari, that court reversed
the judgment of the justice.   Whereupon Seaman brought a
writ of error to this court.

*L. Kingsley,* for the plaintiff in error.

*H. Ballard,* for the defendants in error.

*By the Court,* H. GRAY, J.   The important question in this
case is whether, under the power given to the trustees of school
districts by 1 *R. S.* 478, § 102, to renew warrants, for the col-
lection from delinquents of such sum or sums of money as re-
main unpaid, they have the power to issue a new warrant for
the same purpose.   In *Fulsom* v. *Streeter,* (24 *Wend.* 269,)
it was held that the renewal of a warrant was equivalent to is-
suing an original warrant.   Nelson, J. said : " The renewal is
in fact but a re-issuing of process," and he perceived " no reason
against regarding it as an original issuing."   And in *Smith
and others* v. *Randall,* (3 *Hill,* 498,) the court held that the
renewal was in effect a new warrant.   Bronson, J. said, by the
words " we renew it," they in effect gave a new or original com-
mand to levy."   No form of renewal is provided by statute.
Executions issuing from justices' courts are required to be re-
newed " by an endorsement thereon to that effect."   But the
statute in this case makes it " lawful for the trustees to renew
such warrant in respect to such delinquent persons;" (1 *R. S.*

Seaman *v.* Benson.

473, § 102;) leaving the trustees at liberty to adopt any method that shall be in conformity with the statute. The renewal of a warrant is the renewal of the command contained in it. By it the same power is given to the collector, the same time within which to collect, and the same responsibilities are imposed upon him, as if it was an original warrant. And I am unable to perceive the substantial difference between the renewal of it by a repetition of the command in the form of a new warrant, and renewing it by endorsement upon the back of the original.

Session laws of 1839, page 304, section 5, was cited on the argument, to show that the trustees had no power to renew the warrant, without the approbation of the town superintendent of common schools. But see section 13 of "an act amendatory of the several acts relating to common schools," passed April 17, 1843, requiring the written approbation of the town superintendent whenever more than *one* renewal of the warrant shall become necessary. This act relieves the case of all doubts in relation to one renewal of the warrant, and that was all that was made in this case.

It was insisted that a portion of the tax for which the warrant was renewed had been paid, and that the warrant, having been issued for too much, the sale under it was void. If the whole tax had been paid, then the sale upon the warrant would have been void. The plaintiff in error was confessedly delinquent in the payment of all but a very small amount of his taxes; and if the warrant was issued for more than was due, his remedy is not in trespass or trover for the property sold ; because the property was rightfully taken for so much as was due. If it was taken or sold for too much, his remedy is in case for the injury sustained, or in assumpsit against the trustees for the excess of moneys in their hands arising out of the sale, over and above what was sufficient to pay the amount unpaid.

The plaintiff in error also insisted that the trustees should have produced the rate bills and warrants. If the plaintiff, when before the justice, had stopped with the parol proof of the warrants when he had shown sufficient to connect the trustees

with the conversion of the cow in question, and had then ob-
jected to parol proof of its contents as a justification, his objec-
tion should have been sustained ; but he did not do so.  On
the direct examination, he not only proved that the cow was
taken by a warrant under the hands of the trustees, but he
went further, and proved by parol the contents of the rate bills,
and of both the old and new warrants, for the purpose of show-
ing the warrant invalid ; in relation to which the witness was
fully cross-examined without objection.  So that the contents
of the rate bills and warrants, so far as was material or necessary
for the purpose of determining their validity, was before the justice.
And after the evidence on both sides had closed, and in the fifth
point in his argument before the justice upon the evidence thus
closed, (and that too after the defendants in error must have
made their argument,) the plaintiff insisted that the trustees
had not shown a justification, because they had not produced
the rate bills, warrants and other proceedings necessary to
give them jurisdiction.  The objection came too late.  The
judgment of the common pleas must be affirmed.

