LEWIS O. WILSON *v.* THE MAYOR, ALDERMEN AND COMMON-
ALTY OF THE CITY OF NEW YORK, HARVEY HART, Re-
ceiver of Taxes, and JOSEPH JENKINS, a Constable. (*a*)

The power of the state to tax all property within its limits, whether real or
personal, is unquestionable.

In the state of New York, the constitution recognizes the existence of the
power, but leaves to the legislature to determine upon what description of
persons and property, and in what ratio, the imposition shall be made.

It would be competent for the legislature to tax the personal property owned
within this state by non-residents.

Whether the imposition of such a tax would be expedient?   *Quere.*

A person aggrieved by an illegal tax or assessment, has ample remedies at law,
without invoking the power of a court of equity.

  1. While the assessment roll remains in the hands of the assessors, the
error may be rectified on application to them; afterwards, by the commis-
sioners of taxes; and finally, the tax may, in some cases, be remitted by the
board of supervisors.

  2. A writ of *certiorari* may, in some instances, be granted.

  3. Also a writ of *mandamus.*

  4. And also a writ of *prohibition.*

  5. There are other modes wherein, if the injury caused by an illegal
assessment cannot, in a particular case, be prevented by either of the pro-
ceedings above adverted to; it may, nevertheless, be fully redressed by an
action at law, each case, however, depending upon its own circumstances.

---

(*a*) NOTE BY REPORTER.—The views expressed in the decision of this case,
upon the merits, at the special term, have been widely adopted by other
courts in this city and state. They had the concurrence of the Superior
Court, in *The New York Life Insurance Company* v. *The Supervisors, &c.,* re-
ported in 4 Duer, 192. In that case, the late Chief Justice DUER, (page 200,)
referring to the decision here, as furnished to him by counsel in manuscript,
said: " The opinion is certainly the ablest and fullest examination of the ques-
tion of jurisdiction, in all its aspects and bearings, that we have met with,
and it clearly proves that it is not necessary that a party aggrieved by an
illegal taxation shall have recourse, in any case, to a court of equity, since, in
all, if he act promptly, and under proper advice, he may have an adequate
remedy in a court of law." It has seemed to the reporter proper to make the
case an exception to the rule, which he has almost uniformly followed, to ex
clude decisions not made or affirmed at a general term. Although published
with the cases of December, 1855, the decision was rendered in July, 1854.

6. The assessors themselves, and in some cases the parties by whom the original warrant for the collection of the tax is issued, may be liable, where they exceed their jurisdiction.

7. *It seems,* that where no legal right exists to impose a tax, if the same be collected by distress and sale of goods, or if, upon the levying of a warrant, the tax is paid to save the property; the money may be recovered back of the body who receives it from the collector.

Accordingly, *held,* that as a party aggrieved has remedies at law, a court, acting as a court of equity, has no jurisdiction to restrain, by injunction, the collection of a tax unlawfully assessed upon personal estate.

DEMURRER to the complaint.

*Augustus F. Smith,* for the plaintiff.

*Abm. R. Lawrence, Jr., Richard Busteed* and *Robt. J. Dillon,* for the defendants. (*a*)

WOODRUFF, J.—The complaint in this action is addressed to this court as a court of equity, and prays a perpetual injunc-

---

(*a*) The following citations were made by the counsel on the argument at general term on appeal from the decision of Judge WOODRUFF: Laws of 1850, p. 123, § 1; 1 R. S. 389, § 5; Amend. Laws 1850, p, 142; *Williams* v. *Holden,* 4 Wend. 224; *The People* v. *Supervisors, &c.,* 1 Kern. 563; *The Mohawk & H. R. R. Co.* v. *Clute,* 4 Paige, 385, 392, 396; *Thompson* v. *Ebbits,* 1 Hopk. 372; *Bank of Utica* v. *City of Utica,* 4 Paige, 400; *The Farmers' Loan & Trust Co.* v. *The Mayor,* 7 Hill, 261; *The Utica Manufacturing Co.* v. *The Supervisors of Oneida County,* 1 Barb. Ch. R. 432; *Boreel* v. *The Mayor, &c.,* 2 Sand. S. C. R., 552; *Sun Mut. Ins. Co.* v. *The Mayor,* 8 Barb. 450; *Albany and Schenectady Railroad Co.* v. *Osborn,* 12 ib. 223; *Sun Mut. Ins. Co.* v. *The Mayor,* 5 Sand. 10; *Bartlett* v. *The Mayor,* 2 ib. 44; *N. Y. Life Insurance Co.* v. *Supervisors, &c.,* 4 Duer, 192; *Moers* v. *Smedley,* 6 Johns. C. R. 2; *Livingston* v. *Hallenbeck,* 4 Barb. S. C. 10; *Van Rensselaer* v. *Kid,* 4 ib. 17; *Bouton* v. *City of Brooklyn,* 7 How. 198; *Chemical Bank* v. *Mayor, &c.,* 1 Abbott, 79; *Douglass* v. *Mayor, &c.,* 1 Duer, 180; *Cannon st. Baptist Church* v. *Mayor, &c.,* HOFFMAN, J.; *Thwing* v. *Mayor, &c.,* ROOSEVELT, J.; *Society Library* v. *Mayor, &c.,* EMMET, J.; *Van Doren* v. *The Mayor, &c.,* 9 Paige, 288; *Wiggin* v. *The Mayor, &c.,* 9 ib. 16, 24; *Mayor* v. *Meserole,* 26 Wend. 122; *Simpson* v. *Lord Howden,* 3 M. & C. 97; *Newstadt* v. *Joel,* 2 Duer, 530; *Dangstone* v. *Hudson R. R.* 3 Code Rep. 143; *Woodworth* v. *Lyon,* 1 Code Rep. N. S. 163; *Sanders* v. *Springteen,* 4 Wend. 429; *Ontario Bank* v. *Brunell,* 10 Wendell, 186; *Weaver* v. *Devendorf,* 3 Denio, 117; *Prosser* v. *Secor,* 5 Barb. 607.

Wilson *v.* The Mayor, &c., of New York.

tion to restrain the collection of a tax for the year 1850, imposed upon the defendant as the owner of personal property within the city and county of New York, for the collection of which a warrant has been issued by the defendant, Hart, as receiver of taxes for the city and county of New York, directed to the defendant, Jenkins, a constable; in pursuance of which, the latter has distrained certain property of the defendant, and is proceeding to sell the same for the collection of such tax. The facts which the plaintiff avers entitle him to the relief sought are, that he is illegally assessed in this city and county; that the plaintiff, during the whole of the year 1850, and for eight years last past, has resided in Norwalk, in the state of Connecticut, and has not resided within the state of New York, and that as such resident of Connecticut, and a taxable inhabitant therein, he has been duly assessed upon his personal property, and has paid taxes thereon in that state; that the assessors of the city and county of New York made the assessment of the amount authorized by law to be raised by tax upon the real and personal property in the city, and, under the pretence that the plaintiff was a taxable inhabitant in the said city did, in 1850, assess him as the owner of personal property in the third ward of the said city; that the assessment roll containing such assessment was afterwards delivered to the tax commissioners and to the board of supervisors, and submitted to their action, and afterwards the corrected assessment rolls of each ward were delivered to the receiver of taxes, with the usual warrant to collect the tax and pay the same to the chamberlain of the city; that the name of the plaintiff was inserted in such roll, and he was charged therein with $568 75, as a tax upon personal property; that the plaintiff received no notice, and did not know that he was to be assessed, nor that any tax had been imposed upon him or his property until long after such assessment roll had been delivered to the said receiver; that soon after the plaintiff learned that such tax had been imposed in May, 1851, he applied by petition, verified by his oath, to the common council, stating the fact of

his non-residence, and praying the remission of the said tax, which they refused ; that previous to this petition, to wit, in January, 1851, the defendant, Hart, (receiver of taxes,) issued his warrant to the defendant, Jenkins, (a constable,) commanding him to levy the amount of the said tax, with interest and costs, by distress and sale of the goods and chattels of the plaintiff, and such distress has been made, and sale thereof will be made, unless restrained by order of the court.

The complaint then avers, that it will be the duty of the defendants, Hart and Jenkins, to pay the money, if collected, to the city chamberlain ; that he has notified Jenkins of his non-residence ; that Jenkins persists in his levy ; that neither Hart nor Jenkins are of sufficient responsibility to answer for the damages he will sustain by a sale of his property under such warrant ; that the plaintiff cannot have adequate relief except in a court of equity ; that such tax, so attempted to be imposed, is illegal and void ; that such illegality does not appear on the face of the proceedings, but that the evidence of the want of jurisdiction in such assessors to impose the tax, and of the illegality of such imposition, must be given, out of the record of the proceedings, by proof of extrinsic facts, upon proving which, the plaintiff is entitled to have the assessment declared illegal as to him, and the collection of the tax restrained, &c.

The defendants have interposed separate demurrers to the complaint, " for that the said complaint does not state facts sufficient to constitute a cause of action."

It was insisted by the counsel for the defendants, on the argument of the demurrers herein, that the plaintiff is liable to taxation in this state in respect of his personal property found here when the assessment was made ; and that inasmuch as the plaintiff does not aver that he had at that time no personal property within the city and county of New York, he has not shown that the assessment was either illegal or erroneous.

The power of the state to tax all property within its limits, whether real or personal, cannot be denied. Taxation itself,

for the purpose of maintaining and upholding the government, is essential to the idea of its existence, and the power to impose such taxation is said to reside in the government, as a part of itself. In this state, while the constitution recognizes the existence of the power to impose taxes, it leaves its exercise to the legislature, and save only by prescribing certain rules regarding the mode of enacting laws imposing taxes, it has left the extent of taxation and the manner of its apportionment solely and exclusively to the wisdom and justice of the legislature. In one section of the constitution (§ 5, art. 7) the particular taxes mentioned (for the increase of the sinking fund of the state) are authorized in these terms, viz: "The legislature shall, by equitable taxes, so increase the revenues," &c. And it may be assumed as within the spirit and meaning of the constitution, that all taxes should be equitable. But I apprehend, that in the apportionment of taxes, and the assigning to persons or to property the portion which each shall contribute to the public burdens, the legislature have the sole and exclusive power of determining what is just and equitable, and upon what description of persons, and upon what property within the state, and in what ratio, the imposition shall be made. (See *Prov. Bank* v. *Billings*, 4 Peters, 514; *McCullough* v. *Maryland*, 4 Wheat. 428, cited in *The People* v. *The Mayor*, &c., 4 Comst. 427.)

And there is nothing inequitable in requiring of the owners of personal property found in this state, and kept here protected by our laws, it may be acquiring enhanced value from our institutions and government, our public works, the large development of public and private enterprise within our limits, and various other circumstances, which give value and usefulness to property, and hold out to non-residents an inducement to bring or send their property or funds to be used or sold here, that they may derive enhanced prices or larger income therefrom, to render to our government a just equivalent; to bear the same burden, in respect of such property, as the citizen himself bears, in respect of his own estate, in the like condition.

On the contrary, if the question be judged of upon the simple inquiry what is equitable, as between those who bring their wealth to our state and city, and here avail themselves of our facilities for trade, commerce and enterprise of every kind, seek and obtain our protection, become competitors for the gains and profits of that business which we have done so much to facilitate and promote, and bear away the enhanced income, which (by reason of the advantages of our location, the character of our institutions, the encouragement we give to private enterprise, and the facilities which our public works afford) they have been able to acquire; if what is equitable between them, be the sole guide in the apportionment of taxation, it may be said with great truth, that they should share in proportion to the benefits enjoyed; and no fairer criterion could be devised than the amount of property so employed and so protected. To say that, because one of them, after the heat and labor of the day—after the accomplishment of the purpose for which he is employing his property here—crosses the river, or the Connecticut line, to seek the sleep necessary to restore his vigor for the next day's contest with his citizen rival, though he leaves his property secure and protected under the efficient guardianship we provide, he, nevertheless, ought to pay nothing, and his resident competitor in the strife for wealth should pay all; or, to say that his contribution shall only be given to the sovereignty that protects him in his sleeping hours, is plainly inequitable, and if no other considerations but such as respects those individuals be taken into view, is unjust.

And the present plaintiff, in this aspect of the case, would have no just ground of complaint, if engaged in business in this city, and employing his capital, and enjoying the advantages above suggested, our government should require from him an equivalent therefor, by levying upon his capital the same contributions which our own citizens are required to pay for the common benefit, notwithstanding it suits his convenience or pleasure to fix his domicil just without our borders.

But in the exercise of the power of taxation, and in its apportionment, considerations of expediency do, and may properly influence the legislature in their enactments; and it is eminently desirable that while equality is to a certain degree sought, uniformity in the rule of taxation should obtain; and it may often be true, that what is, upon the whole, best for the state, results in a seeming inequity as between individuals, or inequality between particular cases; while comity towards other states may also be properly regarded. Thus, if the legislature were to tax the personal property of non-residents, consistency and comity would require that the personal property of our own citizens, employed or invested out of this state, should be exempt from taxation here.   So the policy of the state may require that non-residents should be encouraged to bring or send their funds to this state for employment or investment, and our community may realize therefrom, in other modes, advantages which, in the end, fully compensate for the immunity from taxation, which is accorded to them.

But it is unnecessary to pursue this branch of the subject. The inquiry is, in this tribunal, not what properly might equitably be taxed, nor what property it is expedient to tax, but what property is by law taxable?—what has our legislature, by its enactments, made taxable?

And on this subject I have no doubt that our legislature intended to recognize, and have recognized and adopted in reference to taxation, the general rule that personal property has no *situs*, that it follows the domicil of its owner, and that the incidents to the ownership, in this respect, as in many others, (e. g., the law of its distribution on the death of its owner, and its administration by courts of probate; its transfer by assignment; the rights of creditors thereto under attachment, after such assignment, and the like,) are governed by the law of the domicil.

It is true that the first section of title 1st of chapter 13, part 1st, under the head of " Property liable to taxation," declares that " all lands and all personal estate within this

state shall be liable to taxation" (with certain specified exceptions not material to the present inquiry).

But when this is read in connection with the generally recognized rule above referred to, that personal property has no *situs* apart from the domicil of the owner, which; in substance, imports that personal property is not within the meaning of the statute, " within this state," unless its owner resides here, it is entirely consistent with its exemption from taxation here; and to my mind the subsequent provisions of the same chapter show that such was the meaning of the legislature.

Thus, section 5 of title 2 enacts that " every person shall be assessed in the town or ward where he resides, when the assessment is made, for all personal estate owned by him." This may be said to imply its converse, that no person shall be assessed in any town or ward in which he does not reside.

Again, in prescribing the duties of assessors, section 9, article 2, of same title, directs them to prepare an assessment roll, in the first column of which they shall set down the names of all the taxable inhabitants of the town or ward, and in the fourth column the full value of all the personal estate owned by such person.

Section 11 provides for a separate assessment of lands belonging to non-residents, but no provision is made respecting personal property owned by a person who is not an inhabitant, thus showing that no such assessment was contemplated, and no duty imposed upon the assessors in respect of the personal estate of any such person.

Section 15 prescribes the oath to be taken by a person assessed, and which oath shall govern the amount of assessment; and this, as well as the other sections above referred to, make the taxable amount embrace all personal property owned by him. This shows that no regard whatever is had to the place where such personal property may happen then to be; it is treated as in the possession of its owner.

Surely if the assessment was designed to embrace property of non-residents which might be found here, it would have

exempted the property of residents which might happen to be in another jurisdiction, for the legislature aiming, as we must believe they would, to enact a just rule, would undoubtedly assume that a just rule here would be a just rule and would be adopted within such other jurisdiction; and, therefore, if the taxation of the personal property of a non-resident was proper here, the taxation of the personal property of our citizens would be imposed there. And hence, that if we tax non-residents here, and tax all the property of our own citizens, also, the latter would be taxed twice on the same subject.

And, moreover, if the personal property of a non-resident is taxable, in what town, ward or county is it taxable? There is nothing in the statute which can answer this question; and for aught contained in this statute, the property of a non-resident of the state may as well be taxed in Buffalo as in New York or in Albany, and as well in the latter place as in either of the former. No part of the statute, either directly or by implication, makes personal property taxable in the town or city where it may happen to be, whether it belong to a citizen or not.

And finally, there is no clause which makes it the duty of the assessors, or which gives them authority to insert in the assessment roll the name or personal property of any person who is not an inhabitant of the town or ward, except so far as the provisions in relation to the land of non-residents require that land so owned shall be taxed. (See *Van Rensselaer* v. *Cottrell*, 7 Barb. 129, below referred to, that it is necessary, to the jurisdiction of assessors over personal property that the owner be an inhabitant of the town or ward, &c.)

Whether it is wise and expedient, in view of the immense amounts of personal property employed in this city, in the various pursuits of trade, commerce, navigation and manufactures, by persons who have their residence just without our borders, that the state should subject it to taxation for the relief of our citizens; and whether to that end they should make the carrying on of such business here a sufficient resi-

dence or inhabitancy to subject such persons to this tax, is a question exclusively for the legislature. There is no doubt of their power, if they think its exercise will, upon the whole, be useful and proper. As the law now is, such persons are not inhabitants, nor, in my opinion, taxable as such.

I should not have deemed it at all necessary to discuss this question at so great length, but that the point was pressed by the counsel for the defendants on the argument, and that the common council of the city appear by the complaint to have had the question urged upon them by the plaintiff, and to have persisted in the claim, that he is liable to taxation here. And the heavy burden of taxation borne by our citizens renders it in no wise remarkable that the city authorities should be desirous of effecting a diminution of the burden so far as they legally may, by extending it over all the property protected and fostered by that government, to the maintenance and support of which the taxes are applied. Nevertheless, in the further view which I have taken of the case before me, what I have said may be deemed unnecessary, because not essential to the determination which I am called upon to make.

The defendants' counsel further insist, that this case is not within the jurisdiction of this court, as a court of equity, and that upon this ground the plaintiff must fail in this action.

The want of jurisdiction is not named as a ground of demurrer. The Code of Procedure, in section 144, provides that the defendant may demur to the complaint, when either of six causes of demurrer appear on the face of the complaint. The first of these causes is, " that the court has no jurisdiction of the person of the defendant, or of the subject of the action ;" and the sixth is, " that the complaint does not state facts sufficient to constitute a cause of action ;" and section 145 declares, that unless the demurrer distinctly specifies the grounds of objection to the complaint, it may be disregarded.

The defendants here rest their demurrer solely upon the sixth ground above referred to.

It may well be doubted, whether, upon such a demurrer, the defendants were at liberty (had the objection been taken) to discuss the question of jurisdiction at all; and whether, for the purposes of the issue of law made up by the parties, they ought not to be deemed to have submitted to the jurisdiction of the court. It would seem that the legislature intended that the demurrant should distinctly apprise his adversary of the precise question it was intended to discuss, and that the trial of an issue of law should be confined to the very ground of demurrer assigned. And the enumeration of the want of jurisdiction, being one of the six causes specifically mentioned, it should not be availed of as a ground of demurrer, unless the demurrer itself assigns it specially.

It is true, that under section 148, the objection to the jurisdiction of the court is not to be deemed waived by the omission to set it up, either by demurrer or even by answer; still it by no means follows that it can be raised on the argument of a demurrer that assigns a different cause.

Whether, if not so set up, the objection should only be permitted on the final hearing; or whether and how far it can be urged in any and what other stages of the cause, the Code does not provide. But it is at least doubtful whether, on the argument of a demurer, (e. g., specifying for cause, "that several causes of action have been improperly joined,") the demurrant should be permitted to depart at all from the very ground upon which the demurrer is based. .

The judgment which the court is called upon to give, is a judgment upon the very issue of law raised by the parties by their pleadings.

But the question of jurisdiction was discussed at length on the argument, and without objection on the part of the plaintiff, probably upon a view of the subject which may be sound, viz., that the want of jurisdiction of the cause of action may be urged in any and all stages of an action, whatever may be the formal question before the court, though the form of the judgment upon the issue of law presented might be somewhat embarrassing. If the court are of opin-

ion that cause of demurrer assigned has no foundation, how can they give judgment for the demurrant upon that issue?

Possibly counsel suppose that, notwithstanding the provisions requiring the demurrant to specify want of jurisdiction, when that is the ground of demurrer, yet that if it appears on the argument that the cause is not one of equity cognizance, the plaintiff has not shown that in this action, and upon this complaint, he has a cause of action upon which the court can give him any relief. This is a somewhat latitudinarian construction of the meaning of the Code, not very satisfactory to my mind. The power of the court over the subject, when the jurisdiction of the court is voluntarily submitted to, cannot be questioned. It has often been exercised in this state, and relief given, as will appear hereafter.

I do not, however, wish to be understood as giving any decided opinion upon the construction of the Code, or upon the rule to be observed in this particular. The counsel for both parties have concurred in submitting the question of jurisdiction as properly before me under their demurrers, and I may therefore properly dispose of the case upon that question.

And under the course of decision which has been had in this state in like cases, the precedents do not furnish a very satisfactory guide to a result. Upon a review of the subject I am nevertheless brought to the conclusion that the plaintiff has mistaken his remedy, and that no amendment can be made which will entitle him to any relief of the nature sought by the present complaint.

Briefly, the reasons for this conclusion are, that by a wrong, such as is complained of here, no irreparable mischief is threatened—no cloud is thrown over the title to any real estate, which a court of equity may properly be prayed to remove—and the remedy is ample at law, without invoking the powers of the court as a court of equity, which alone are appealed to in this action.

To trace the course of judicial decision in this state, and point out the mode in the various exigencies which may arise, in which an illegal assessment for taxes may be set aside or

corrected, or its collection restrained, or the wrong done thereby be redressed, is not an easy labor.  Upon a cursory inspection of the cases there would seem to be no little conflict; but I apprehend that, in truth, there exists, notwithstanding intimations of doubt thrown out in some of the opinions, full remedy at law in all cases in which personal estate only is affected thereby.

1. The mode of rectifying such assessments by affidavit, while the assessment roll remains in the hands of the assessors; (1 Revised Statutes, 392–3; Laws of 1850, chap. 120;) the notice they are required to publish to enable persons assessed to make such correction; the review of such assessments by the board of assessors or commissioners of taxes, on the application of any person conceiving himself aggrieved; (1 Revised Statutes 393, and Laws of 1850, chap. 120;) the further power of the supervisors to correct the rolls and remit taxes, (p. 395, Laws of 1844, chap. 250, § 2, and Laws of 1850, chap. 120,) need only be mentioned.  In many respects, no doubt, their acts are final and conclusive.  If their proceedings are regular, and they act within the scope of their jurisdiction, following the directions of the statute, no mere error in the valuation of the property of a taxable inhabitant, or in the exercise of their discretion, or in determining the weight or sufficiency of evidence laid before them, can, I apprehend, be reviewed by any tribunal.

But, if they impose a tax upon property, which is not by law taxable, or assess a person who is not liable to assessment, or if they commit errors by making up the assessment without complying with the essential requirements of the statute, or make an illegal apportionment of the taxes imposed, and whether the illegality of the acts appears on the face of their proceedings, or arises from extrinsic facts to be proved *dehors* the proceedings themselves, I have no doubt a review may be had, or redress may be obtained.

2. Whether a *certiorari* will lie, and such review be had thereon, and the extent of such review has been much discussed.  If, however, a review be had by *certiorari*, it can,

(according to the opinions given in the cases mentioned below,) only reach such illegalities as are apparent upon the proceedings themselves, (*The People* v. *The Mayor, &c., of New York*, 2 Hill, 9, and *The matter of Mount Morris Square*, 2 Hill, 27–8, and cases cited,) and it seems questionable whether, after the assessment rolls have gone into the hands of the collector, and the warrant has issued, any review by *certiorari* would avail to stay the collection of the tax.

That the Supreme Court have power to grant such a writ, and thereupon to review the proceedings, is, however, settled. Such writ was granted in *Storm* v. *Odell*, (2 Wend. 287,) to review the assessments for a school tax, and in *Caledonian Company* v. *Trustees of Hoosick Falls*, (7 Wend. 508, and note on 665,) to review the assessments for a village tax. (And see effect, &c., in cases cited in the note.) But in *Lawton* v. *Commissioners of Cambridge*, the court say : " Though the power of the court is indisputable," there are cases in which they will not interfere. In the case of a poor rate, they will refuse the writ, as also in the assessment of a land tax, from a regard to the public convenience. (Cites 2 T. R. 235, which refers to 2 Strange, 932 and 975.)

In *The People* v. *The Supervisors of Alleghany*, 15 Wend. 198, and *The People* v. *The Supervisors of Queens*, 1 Hill, 196, and *The People* v. *The Mayor, &c., of New York*, 2 ib. 9, the subject is discussed at great length ; and although the power of the court to issue the writ and review the proceedings is asserted, yet it is declared to issue, not *ex debito justitiæ*, but to be a matter within the discretion of the court, and the writ was refused. In these cases the illegality alleged the allowance of improper county and town charges, which increased the amount to be raised by taxation. The remarks of the court indicate, that in general such writ ought not to be allowed, by reason of the great public inconvenience it must occasion. And it appears, by the report of *Mooers* v. *Smedley*, 6 J. Ch. R. 30, that the Supreme Court had refused the writ in a like case, many years before. In *The matter of Mount Morris Square*, 2 Hill, 14, where a writ of

Wilson *v.* The Mayor, &c., of New York.

*certiorari* was applied for, to review an assessment for opening a public square, the court took the same view of the subject; and Judge Cowen says:

"In general we ought not to allow the writ where assessments of taxes are in question, which affect any considerable number of persons. If there be a want of jurisdiction, even in the judicial act sought to be reviewed, or, in other words, if there be an excess of legal power by which any person's rights may be injuriously affected, an action lies, and it is much better that he should be put to this remedy, than that the whole proceeding should be arrested, and perhaps finally reversed for such a cause." And yet, in *The People* v. *The Mayor, &c., of Brooklyn*, the proceedings in an assessment for a sewer, of the same nature as the case last cited, were removed to the Supreme Court by *certiorari*, and reversed or annulled. (6 Barb. 209.) And like proceedings for the grading of a street were in the same manner removed and annulled between the same parties. (9 Barb. 535.) And still other, between the same parties, were in like manner reversed, which is not reported from that court. The case last referred to was appealed to the Court of Appeals, and the decision reversed upon the merits, and not upon the ground that the proceedings might not be so annulled on *certiorari;* but Justice Ruggles, in giving the opinion of the court, makes this suggestion: "It is well settled, that upon a common law *certiorari*, the court will not examine the proceedings returned, further than to ascertain whether the inferior tribunal has kept within its jurisdictional limits." (4 Comst. 441.)

In *Chegaray* v. *Jenkins*, 1 Selden, 382, the same member of the Court of Appeals waives the consideration of the question, whether an erroneous assessment of taxes upon real estate, not liable to taxation, can be corrected upon *certiorari;* and in *Morewood* v. *Hollister*, 2 Selden, 309, in the same court, in discussing the proceeding by common law *certiorari*, it is said: "The court of review, in such cases, only examine to see if the officer acquired jurisdiction, and

acted, during the whole proceedings, within the limits of the jurisdiction acquired."

In most of the cases above referred to, and in *Van Rensselaer* v. *Cottrell*, 7 Barb. 127 ; *Same* v. *Whitbeck*, ib. 133 ; *Weaver* v. *Devendorf*, 3 Denio, 119, and *Sheldon* v. *Van Buskirk*, 2 Comst. 473, the making of the assessment is declared to be a judical act ; and although it is within the power of the court, and the province of the writ of *certiorari*, to bring such proceedings under review, it is manifestly according to the course of the decision referred to, to confine the exercise of the power of the court, in such cases, within very narrow limits, and in general to withhold it.

So far as this branch of the discussion bears upon the case before me, it is manifest that a *certiorari* could be of no avail to the present plaintiff. His complaint avers that he had no notice of the assessment before a warrant to the receiver of taxes to collect the tax was issued ; and not being a resident of the state, he was not chargeable with any notice by reason of any posting of notices by the assessors, in the ward in which he was taxed. If the proceedings were removed by *certiorari*, no want of jurisdiction would appear on their face, and the cases above referred to seem to show that no proof of extrinsic facts could be taken in the court of review, for the purpose of showing the want of jurisdiction or other illegality. (*a*) . And besides, according to the opinions in the above two cases cited from 15 Wend. 198, and 1 Hill, 196,

---

(*a*) See an elaborate opinion on the office of a common law *certiorari*, by Ch. J. KINSEY, in *The State* v. *Middlesex*, Coxe Rep. 244, in which the Supreme Court of New Jersey received evidence of facts not appearing on the record. And in the case of the *New Jersey Railroad Co.* v. *Suydam*, 2 Harr. 25, and cases therein cited, it is held that where a *certiorari* issues to commissioners, or other *quasi judicial officers*, the court may order or permit proofs to be taken of extrinsic facts, showing the proceedings to be illegal, though they will not inquire into the merits of any matter within the jurisdiction of the subordinate tribunal. I did not, however, think it necessary to pursue that inquiry further than to report what is said in the cases in our own state, and yet the practice in New Jersey seems to me calculated to secure the ends of justice, and to be quite consistent with the proper office of this writ.

such *certiorari* would not operate to prevent the execution of the warrant which issued before the plaintiff had notice, and, therefore, before the *certiorari* could have been obtained.

3. However imperfect or inadequate the remedy by *certiorari* may be, it is said that a *mandamus* is proper where a party has a legal right, and there is no other appropriate legal remedy, and where in justice there ought to be one. (See *The People* v. *Supervisors of Albany*, 12 J. R. 414; *Ex parte Nelson*, 1 Cow. 417; *Hull* v. *Supervisors of Oneida*, 19 J. R. 260; *In the matter of Bright* v. *Supervisors of Chenango*, 18 ib. 242.) In these cases jurisdiction by *mandamus* was entertained, to compel the supervisors to allow county charges—in one of them made peremptory, and in two denied on the merits—showing that those bodies who control the subject to which this suit relates, may properly be reached by *mandamus*, and in a matter of strict right, not resting in their discretion, may be compelled to conform their proceedings to such strict legal right of the party applying, to prevent injustice.

In *The People* v. *The Mayor*, &c., *of New York*, 10 Wend. 393, a *mandamus* was applied for, to compel the defendants to execute and deliver a lease on a sale of land for assessments, and the court held the remedy appropriate, although upon the merits of that case they refused it.

In *The Bank of Utica* v. *City of Utica*, in which the legality of an assessment for taxes on personal property of the defendants, which they claimed was not liable to taxation, was the distinct matter in controversy, the chancellor says, (4 Paige, 400,) " I think the complainants had a perfect remedy at law, by an application to the Supreme Court for a *mandamus* to compel the common council, (who by their charter ·have exclusive control of the assessment and collection of the city taxes,) to correct their assessments and taxation, if it was illegal."

In *The People* v. *The Supervisors of New York*, 18 Wend. 605, a *mandamus* was applied for to compel the defendants

to strike from the tax list and from the warrant to the collector, the names of the relators. The power of the court to order such correction of the tax list, while such list remained within the control of the defendants, seems not to have been doubted, though the application was denied on the merits; and the court intimate that under the particular statute relied upon by the plaintiffs, there was a discretion given to the defendants, or a finding, upon the sufficiency of proof to their satisfaction, to be had, in relation to which the court could not interfere.

In *The People* v. *The Assessors of Watertown*, 1 Hill, 616, a *mandamus* to compel the assessors to strike out of the assessment roll for taxes, an assessment upon the personal property of the relators, no doubt of the power of the court to make the order, or of the appropriateness of the remedy was suggested, but the court denied the motion on the merits.

In *The People* v. *The Supervisors of Niagara*, 4 Hill, 20, the defendants had struck from the roll of assessments for taxes certain three corporations, and the relators (being tax payers) moved for a *mandamus* to compel the defendants to restore those names to the assessment rolls. The motion was heard on the merits. No objection was made to the form of the remedy, (all formal objections being waived,) and a peremptory *mandamus* was ordered by the court.

It appears, by the report of *Mooers* v. *Smedley*, 6 Johns. Ch. R. 27, that where the errors complained of was the allowance, by the supervisors, of alleged improper county charges, the Supreme Court refused a *mandamus*, but on what ground is not stated. It may have been upon the merits, or possibly because, the warrant having already issued, the collector, as a merely ministerial officer, could not be reached thereby. But the learned Chancellor KENT, in that case, says, " the superintending control in these cases has always been exercised by the Court of King's Bench and no where else, and that court has proceeded by *certiorari*, *mandamus*, prohibition, information," &c.

In *The People* v. *Supervisors of Queens*, 1 Hill, 196, above

referred to, (in which the error complained of was also the allowance of alleged improper county charges,) the motion was in the alternative for " a *certiorari,* prohibition, *mandamus,* or some other writ, process, order," &c., " for the relief of the relator and other tax payers," &c. ; but it appearing that the warrant had issued, and was in the hands of the collector, the subject of issuing a *mandamus* for the correction of the errors was disposed of by Justice BRONSON, by the remark, " I do not see what use can be made of the writ of *mandamus* in a case like this." And the judge, after stating that motions of this kind are addressed to the discretion of the court, proceeds to consider the propriety of allowing a *certiorari,* (as above stated ;) and having first come to the conclusion that some of the objections to the proceedings have no foundation, and that as to the propriety of the charges objected to, the *certiorari* would be of no avail, because the supervisors would return by their finding that they are proper charges, reäffirms the decision in *The People* v. *Supervisors of Alleghany,* 15 Wend. 198, " that the errors of the supervisors, in these particulars, cannot be corrected without great public inconvenience, and denied the writ."

The particular circumstances in *Mooers* v. *Smedley,* and *The People* v. *Queens,* doubtless warranted the denial of the writ. But they are not inconsistent with the opinion that this writ may often be appropriately used when the assessment rolls are still within the control of the proper body, and they are exceeding their jurisdiction, or violating the clear legal right of an individual, by imposing upon him an illegal tax, where they have no discretion to exercise. The other cases above referred to appear to me to warrant this opinion; and where the party has no other legal remedy, his right to have such writ allowed is, I think, undeniable. (See 1 Hill, 362, and Coxe R. 250, 252.)

It is, however, apparent from what has been said, that the present defendant, having no notice of the assessment in this case until after the warrant for the collection of the tax issued, could not, according to the views of Judge BRONSON,

have made a *mandamus* available to prevent the levying of the tax by the collector. The supervisors had terminated their action on the subject, and transmitted the rolls to the collecting officers; and though they may have had a discretionary power to remit a tax, I apprehend that in doing so they would have acted in no judicial character, but in the exercise of a discretion, governed by their sense of justice, in which they could not be controlled.

4. The relator, in the case last above referred to, also asked for a writ of prohibition to the town collector to stay the levying of the tax. This was denied, on the ground that such writ does not lie to a ministerial officer to stay the execution of process in his hands; that it is directed to a court, and to the party prosecuting an action or legal proceeding therein. (1 Hill, 205.) See the cases cited.

And yet, in *The People* v. *Works*, there referred to, (7 Wend. 486,) the writ of prohibition was granted commanding the collector of taxes to desist and refrain from collecting a town tax, and directing the supervisor of the town not to receive the sum assessed, and not to pay it over if received. The ground of the decision on the merits was, that the tax was illegally voted at a special town meeting, at which they had no power to act on the subject, and also that it was raised for an illegal purpose; and the court deemed this an appropriate remedy, and one provided by the common law against the encroachment of jurisdiction, to keep inferior courts and tribunals within the limits and bounds prescribed to them. This decision, however, is regarded by Judge BRONSON as no authority for the allowance of the writ, though the point was distinctly decided. In the cases mentioned above, as already suggested, the acts of the assessors are said to be judicial, and there would seem no reason in the nature of the proceedings for not addressing this writ to them, and in regarding them, though not a court in name, as liable to be restrained in an excess of jurisdiction when they exceed its limits. In *Breedon* v. *Gill*, 5 Mod. 272, the commissioners of appeal, on the imposition of an excise, were

deemed a tribunal to be restrained by such a writ, and were restrained by the Court of King's Bench. And it would seem, that in South Carolina the collection of a tax has been restrained in the same manner, (*Buyn* v. *Carter*, 1 McMillan, 410,) under what precise circumstances I have not been able to learn. In view, however, of the decision in the Supreme Court, in 1 Hill, *196*, which is certainly in accordance with the proper office of this writ, so far as it was then sought to address it to a ministerial officer, it is apparent that the writ, if it be allowable at all, must be obtained while there is some act to be done or omitted by the assessors themselves or the supervisors. And in the present case the want of notice and the fact of non-residence render such a resort of no avail to this defendant, unless the prohibition can be made to restrain the execution of the warrant, which, according to the case last mentioned, it cannot.

5. There are other modes in which, if the injury caused by an illegal assessment cannot, in a particular case, be prevented by either of the proceedings above adverted to, it may, nevertheless, be fully redressed, and by action at law ; each case in this respect, however, depending upon its own circumstances.

It was argued by the defendants' counsel, that if the assessment be illegal, all parties attempting to enforce its collection are trespassers, and besides, that the purchaser, at a sale under the warrant of distress, would take no title.

This proposition is wholly unwarranted, and is opposed to the best settled rules of law on this subject.

When the warrant is regular, and no illegality and no want of jurisdiction in the authority by whom it was issued appears on its face, the officer is fully protected, and this is true of the warrant complained of in this action.

It is only where the illegality or want of authority appears on the face of the warrant itself, that it fails to protect the officer to whom it is directed for execution.

In *The People* v. *Albany C. P.*, 7 Wend. 485, the warrant is declared to authorize the taking of goods by the officer.

In *The Columbian Manufacturing Co.* v. *Vanderpool*, 4 Cow. 556, trespass was brought against the collector, upon the ground that by law, the property of a manufacturer of cotton, &c., was exempt from taxation. No question of the liability of the collector appears to have been raised, and the action was decided upon the ground that the plaintiffs were properly taxed, which question was alone discussed.

In *Wheeler* v. *Anthony*, 10 Wend. 346, which was also trespass against the collector, the imperfection in the tax list, and warrant referring thereto, were not such as to deprive the defendant of his justification of the taking.

In *The Bank of Utica* v. *City of Utica*, 4 Paige, 400, the chancellor says, that where, as in that case, the illegality appears on the face of the warrant, the complainants have an adequate and certain remedy at law, by an action of trespass, if the warrant be enforced by a sale, &c.

And in *Sheldon* v. *Van Buskirk*, 2 Comst. 475, which was also trespass against a collector of taxes, it was held by the Court of Appeals, that the warrant being on its face in proper legal form, and issued by persons having lawful authority to make and issue a warrant for such a purpose, the officer was protected thereby. See, to the like effect, *Van Rensselaer* v. *Cottrell*, 7 Barb. 132, and *Same* v. *Whitbeck*, ib. 143.) And still more recently, in the same court, in *Chegaray* v. *Jenkins*, 1 Selden, 382, on appeal from the judgment of the Superior Court of the city, (3 Sand. R. 409,) it is held that the warrant having been issued by the proper officers, and there being nothing on its face showing a want of authority in the assessors to make the assessment complained of, or in the supervisors in confirming it, or the receiver of taxes in issuing the warrant, and being in due form of law, it was a perfect justification to the officer, even although the tax was illegally imposed upon the plaintiff's property.

6. The assessors themselves, however, and in some cases the parties for whom the original warrant for the collection of the tax is issued, may be liable. Their acts, so far as they exceed their jurisdiction, do not protect them from liability

to make full reparation for any injury which results therefrom.

It was indeed argued on the hearing, that they have exclusive jurisdiction to determine who are taxable inhabitants, and what is taxable property, and if so, their acts are conclusive and final. Such a rule could not be tolerated, and is not at all sustained by the cases cited to support the proposition, and this sufficiently appears by a series of decisions in this state.

In *Saunders* v. *Springsteen et al.*, 4 Wend. 429, the defendants, as assessors of the town of Lewiston, assessed the plaintiff's land, which, by law, was not taxable in that town, and the tax was collected. In an action on the case against them, they were held liable, and the judgment was affirmed in the Supreme Court.

In *The Ontario Bank* v. *Bunnell*, 10 Wend. 186, trespass was brought against the trustees of a village. The court held, that the plaintiffs were liable to be taxed in the village, and the plaintiffs therefore failed; but no doubt was suggested that if the plaintiffs had not been taxable, a recovery might have been had. And in this case, the true distinction between cases in which a liability does and does not exist, is alluded to, viz., that in so far as the error consisted in an over estimate of the amount, where the party is, in fact, a taxable inhabitant, such error could not avail in such an action. That matter was within the jurisdiction of the assessors, and to be otherwise corrected, if they erred. (See, also, 4 Wend. 223, and 18 Wend. 608.) *In the matter of Mount Morris Square*, above referred to, (2 Hill, 29,) the court says, if there be a want of jurisdiction, or an excess of legal power, even though the act be judicial in its nature, an action lies.

In *Smith* v. *Randall*, 3 Hill, 497, the trustees of a school district were sued in trespass; but the alleged error was in the warrant itself, under which the property was taken.

In *Gale* v. *Mead et al.*, the defendants were sued in trover for a horse, taken by a tax collector, under a warrant issued by them as trustees, for a school tax, and the court being of

opinion that the assessment and tax list made by them were illegal, they were held liable.

In *Weaver* v. *Devendorf*, 3 Denio, 120, also an action against trustees, taken by a tax collector, under a warrant issued by the defendants to collect an assessment made by them, upon the plaintiff's property, the distinction above alluded to is maintained; that the defendants, as assessors, had jurisdiction of all the taxable inhabitants in the town, and, therefore, of the plaintiff and his property; and for an error in judgment, in fixing its value, are not responsible; but that this exemption from liability only exists where there is jurisdiction of the particular case, and if the limits of their authority be transcended, they are responsible for all the consequences.

In *Prosser* v. *Secor*, 5 Barb. 607, the application of this rule, made in the last case, is questioned and condemned; but the rule itself is even more strenuously insisted upon. And, it is held, that assessors have no authority to enter any person's name on the assessment roll, whose property is by law exempt from taxation, or to impose any assessment thereon; that they have no jurisdiction whatever over such persons or their property. The court add, that the assessment of the value is a judicial act, upon which a common law *certiorari* will lie; and that inferior tribunals are bound to see that their acts are within the scope of their authority. They could not, by deciding themselves that the plaintiff was a taxable inhabitant, bring him within their jurisdiction. No officer can acquire jurisdiction by deciding that he has it. This was an action on the case against the assessors of a town, and they were held responsible for the taxes illegally assessed and levied, and collected from the plaintiff.

In *Van Rensselaer* v. *Cottrell*, 7 Barb. 127, Justice HARRIS says, the only fact necessary to the jurisdiction of the assessors is in reference to personal property, that the owner be an inhabitant of the town or ward; and if they should assume to assess lands lying in another town, or to assess an inhabitant of another town for personal property, though it might be

situated in their town, the act of the assessors would unques-
tionably be void for want of jurisdiction.    The case of *Van
Rensselaer* v. *Whitbeck*, ib. 133, decided by the same judge, at
first perusal seemed to conflict with the one last cited, since
there, the plaintiff objected that he was assessed for rents in
Greenbush as personal estate, when, in fact, he resided else-
where ; and yet the assessment was sustained.    But on exam-
ining the statute (Laws of 1846, chap. 327) under which rents
are taxed, it will be seen that, though taxed as personal estate,
they are directed to be taxed in the town within which the lands
demised may lie, and in the same manner and to the same
extent as any personal estate of the inhabitants of the town.
No respect (in reference to this species of property) is had to
the residence of the owner ; and so far as relates to the juris-
diction of the assessors to include it in the assessment, it is
treated as if it were a part of the land out of which it issues.

I understand the same view of the effect of the decision of
the assessors, upon the question of their own jurisdiction, to
be stated by RUGGLES, Chief Justice, in his opinion in the
Court of Appeals, in *Chegaray* v. *Jenkins*, 1 Selden, 381.
Though he held the collector protected by the warrant, he
says, "the decision of the assessors on a·question in which
their own authority to act was involved, (i. e., upon the ques-
tion whether the property in question could, by law, be
assessed,) was not for all purposes conclusive ;" and even "in
collateral actions their judgments may be questioned and dis-
regarded, if it appear that in fact they had no authority to act
in the given·case."    Upon this reference to the cases in this
state, and in view of what I conceive to be just, as well as in
conformity with sound principle, I cannot doubt that assess-
ors are liable for inserting in the assessment roll the name of
a person who is not an inhabitant of the town or ward.    It is
their duty to ascertain who are inhabitants of the town or
ward, and it is only as to such that they have any authority
whatever as assessors of personal property.    This may some-
times be difficult, but every office brings with it duties and
responsibilities, and it is not just to those who may be preju-

diced, nor wise as it respects the public, that an officer who exceeds his authority should not be liable for the consequences. The insertion of the name of an individual in the assessment roll is an affirmative act, and the assessor is not under any duty to make such insertion till he knows the facts upon which the liability of such person depends ; and to hold assessors irresponsible, when, through want of proper information, they assess non-residents for personal property, might lead to great abuse. And to say, further, that the decision of the assessor himself is conclusive, would enable a town or county to tax half the inhabitants of the United States, and, so far as property of the latter could be found in the county, collect the tax by distress and sale. If assessors attempt this, I think them liable for all the damages resulting from their unauthorized act.

How far the supervisors are also liable for lending to such illegal act their authority, may, perhaps, depend upon the question whether they have actual notice of the illegality.

7. I apprehend that the remedy of a party illegally assessed —that is, assessed when there is no legal right to impose any tax upon him—does not cease here. If such tax be collected by distress and sale of his goods, or if upon the levying of a warrant, he pays the tax to save his property, he may, I think, sue for and recover back the money so paid ; and that in such case, the body to whom the tax is paid by the collector, are responsible. If this be so, the allegation in the complaint herein, that the defendants, Jenkins, the constable, and Hart, receiver of taxes, are not of sufficient responsibility, &c., does not add any material fact to the plaintiff's case.

The money is obtained in such case by duress of the plaintiff's property, which may, when paid, be recovered back. It is an illegal exaction without right, and gives the party, for whose benefit or by whose authority it is obtained, no title.

In other states, the precise proposition, that if one pays taxes that are illegally assessed upon him, he may recover back the money, is adjudged. (*A. & C. Manufacturing Company* v. *Inhabitants of Amesbury*, 17 Mass. 461 ; *Perry*

v. *Dover*, 12 Pick. 206; *Sumner* v. *Parish in Dorchester*, 4 ib. 341; *Atwater* v. *Woodbridge*, 6 Conn. 223; *Preston* v. *Boston*, 12 Pick. 7; *Adams* v. *Litchfield*, 10 Conn. 127; *Boston and S. Glass Company* v. *Boston*, 4 Met. 181; *Dow* v. *Sudbury*, 5 ib. 73; *Torrey* v. *Milbury*, 21 Pick. 64; *Joyner* v. *Third School District in Egremont*, 3 Cush. 567.)

Decisions in somewhat analogous cases of payment by duress of property may be found in *Ripley* v. *Gilston*, 9 Johns. R. 201; *Clinton* v. *Strong*, ib. 370; *Elliott* v. *Swartwout*, 10 Pet. 137; *Bates* v. *New York Insurance Company*, 3 J. C. 238; and see *Harmony* v. *Bingham*, 1 Duer, 209.

Actions to recover back money paid for taxes alleged to be illegal, have frequently been brought in this state, and in actions brought in other forms, the right to maintain assumpsit is adverted to. Thus, in *Seaman* v. *Benson*, 4 Barb. 448, where the plaintiff failed in the action of trover, the court says: "If the plaintiff's property was taken and sold for too much, his remedy was not in trespass or trover, but in case for the injury sustained, or in assumpsit against the trustees of the school district, for the excess of the moneys," &c. In *Fleetwood* v *The City of New York*, 2 Sand. 481, which was brought to recover back money paid to redeem land sold for assessments, the court held the plaintiff not entitled to recover, because if the assessment was illegal, there was no lien, and therefore no duress nor compulsion; and the court adverts to the distinction, and to the cases in which duress of personal property, upon seizure thereof by public officers, under process or warrant of law, constitutes such compulsion, that the money paid for its relief may be recovered back.

In *Re Coutenix* v. *Supervisors of Erie*, 7 Barb. 249, action was brought to recover back money paid upon an alleged illegal assessment for personal estate, and no question was made of the liability of the defendants if the tax was illegal, though the case was decided in their favor by sustaining the legality of the tax.

And in the *Mutual Insurance Company of Buffalo* v. *The Supervisors of Erie*, 4 Comst. 442, the action was the same,

and was decided upon the same ground. No doubt was sug-
gested but that the action would lie; and GARDINER, J., says:
"The only question in this cause is, whether the appellant, as
a corporation, is subject to taxation according to the laws of
this state."

. This protracted review of the subject, I think, sufficiently
shows that the plaintiff in this case is not without remedy at
law, and that in some or one of the modes indicated he can
obtain redress, or could have had a remedy adequate to his
protection.

There can be no pretence of irreparable mischief; the pro-
ceeding can only take a certain number of dollars from his
pocket, or, at the worst, personal property of a definite ascer-
tainable value; and in presumption of law and of equity, also,
a like sum will be a full compensation to him.

The apprehended insolvency of Jenkins and Hart, above
alluded to, furnishes no ground for equitable interference, for
the reason above suggested.

And it is not claimed that any real estate is affected by
the acts of the defendant, the title to which is affected or ob-
scured.

I cannot, therefore, perceive any ground for the interference
of a court of equity as such; nor that there is a case here
which can be classed under any head of equity jurisdiction.
And although there are cases in which jurisdiction in equity
has in this state been entertained, so that there is not here
perfect consistency in this respect, yet the current of the deci-
sions is, I think, clearly against the relief which the plaintiff
here seeks.

In *Mooers* v. *Smedley*, 6 Johns. Ch. R. 28, Chancellor
Kent refused to enjoin the collection of an alleged illegal
assessment.

Whether the illegality appeared upon the face of the pro-
ceedings or not, does not distinctly appear; but the alleged
error, consisting in the allowance of improper town charges,
he wholly disclaimed any jurisdiction over the supervisors to
review their determination, whether legal or not, and declares

the superintending control to be in a court of law, as herein above cited.

In *Thompson* v. *Ebbets et al.*, 1 Hopk. R. 272, where the complainant was assessed in two places, he was permitted to interplead the two collectors of the taxes, and leave them to contest the legality of their respective claims to the tax on his personal estate, upon the question of residence. But no objection was raised to the jurisdiction, and the action was entertained simply as an interpleading suit.

In the *Mohawk and Hudson River Railroad Company* v. *Clute and others*, 4 Paige, 384, where, also, the complainant had been taxed in two places, the bill, as a simple bill of interpleader, was regarded as defective in form and insufficient on the merits. The chancellor, however, entertained it for the purpose of an injunction as to one of the defendants whose assessment was illegal. But no objection to his jurisdiction was made, and the subsequent decisions of the chancellor show that if he considered the question of jurisdiction at all, he must have retained the cause upon some ground peculiar to the case of a complainant taxed in two towns on the same property.

For, in *The Bank of Utica* v. *City of Utica*, 4 Paige, 399, the chancellor, distinctly stating that the complainants have a perfect remedy at law, finds himself bound to take jurisdiction, because the parties had stipulated to waive the objection, and thereupon he enjoined the defendants to prevent the collection of an illegal tax.

In *Wiggin* v. *The Mayor*, &c., *of New York*, 9 Paige, 16, the chancellor held that he would not restrain the collection of an assessment for opening a street, to correct an error in the estimate of damages. Nor if the proceedings were void on their face, would he interfere, on the claim that the proceedings created an apparent lien on the real estate assessed therefor, and a cloud on the title.

And having, in 1840, in *Messerole* v. *Mayor*, &c., *of Brooklyn*, 8 Paige R. 198, enjoined the defendants against the collection of an assessment for a street, on the ground that

the opening was without authority, placing his interference, however, under an admitted head of equity jurisdiction, the removal of a cloud upon the defendant's title to real estate, the Court of Errors reversed his decision, (26 Wend. 132,) denying to the Court of Chancery jurisdiction over the proceedings for laying out of streets, for the purpose of reviewing them or setting them aside, and declaring that such jurisdiction appertains exclusively to the Supreme Court, (then a court of law only,) admitting, however, of two exceptions, i. e., where irreparable injury or multiplicity of suits will follow, beyond the power of courts of law to redress.

In *The Farmers' Loan and Trust Company* v. *The Mayor, &c.*, 7 Hill, 261, on appeal from the chancellor, a bill to restrain the collection of a tax on personal property, alleged to be illegal, was entertained, on the distinct ground that the parties having stipulated to waive all objection to the jurisdiction, the Court of Chancery was "not at liberty to decline the consideration of a question which appropriately belongs to courts of law."

In *Van Doren* v. *The Mayor, &c.*, 9 Paige, 388, the chancellor expresses his concurrence in the reversal of *Messerole* v. *Brooklyn*, 24 Wend. *supra*, but asserts jurisdiction where, by reason of matters not appearing upon the face of the proceedings, an assessment for a street was illegal; but, in such case only, when a cloud upon the title to real estate was created by the assessment, citing *Simpson* v. *Lord Howden*, 3 Mylne & Craig, 97.

In *The Utica Manufacturing Company* v. *The Supervisors of Oneida County*, 1 Barb. Ch. R. 432, on appeal from a decretal order overruling a demurrer to the bill, filed to restrain the collection of an illegal tax, the chancellor affirmed the order; but he says expressly, that no such question being raised by defendants' counsel, he has not considered whether it is a proper case of equity cognizance, or whether the complainant had a perfect remedy at law, by *mandamus*, to compel the defendants to strike the name of the complainant from the assessment roll.

In *Livingston* v. *Hollenbeck*, 4 Barb. Sup. Ct. R. 10, the Superior Court, in equity, hold distinctly, on a bill filed to restrain the collection of a tax, that they have no power to interfere, and that the plaintiff has his remedy at law; and in *Van Rensselaer* v. *Kidd*, ib. 17, the same doctrine is re peated.

In *Boreel* v. *The Mayor*, *&c.*, 2 Sand. 552, the Superior Court of the city of New York entertained a bill to restrain the defendants from giving a lease on a sale for taxes, and from selling for other taxes and assessing taxes in future, where the property taxed was adjudged not liable to taxa tion, though the bill was demurred to for want of equity The question of jurisdiction was not discussed, but the question of exemption from taxation only. The decision is hardly consistent with that of the Court of Errors, above referred to.

In *The Sun Mutual Insurance Company* v. *The Mayor*, *&c.*, 8 Barb. 450, the bill was filed to restrain the collection of a tax on personal property, for which a warrant had been issued and a levy made. An injunction was granted at special term, but dissolved on appeal upon the merits; but it would seem that no question of jurisdiction was intended to be raised—at all events, the court do not pass upon that question. Whether it was conceded, or taken for granted by the court, does not appear.

And in *The Albany and Schenectady Railroad Company* v. *Osborn*, 12 Barb. 223, though the court entertained the question of the legality of the tax, it appears to have been considered and decided, because that was agreed upon as the sole question in the case—objection to the jurisdiction being thus waived.

So in *The Sun Mutual Insurance Company* v. *The Mayor*, 5 Sand. 10, the question of the legality of a tax on personal estate was considered in equity, after the warrant was issued to the collector and decided on the merits; but it does not appear that the question of jurisdiction was argued or con sidered by the court.

VOL. IV.                    45

And in *Bartlett* v. *The Mayor, &c.*, 2 Sand. 44, where an injunction was applied for, on the distinct ground that the plaintiff was not a resident of this city, and was illegally taxed here, the case was considered upon the merits, and the plaintiff was deemed a resident, within the meaning of the act of 1850. (Sess. Laws 1850, ch. 92.)

The jurisdiction of the court would seem to have been taken for granted. But as the question does not appear to have been raised, the case cannot be deemed an authority in support of the jurisdiction, in opposition to the previous cases.

And in the case of *Bouton* v. *The City of Brooklyn*, 7 How. Pr. R. 198, where the Supreme Court of the second district was applied to for an injunction to restrain the collection of an alleged illegal assessment upon real estate for a public park, the court held, on demurrer, that the plaintiff had a remedy at law, and that a court of equity would not interfere, even to remove a cloud upon the title to the lands assessed in such a case.

And see, also, a decision, to the like effect, in *Thatcher* v. *Dusenbury et al.*, 9 How. Pr. R. 32.

Entertaining the views which I have stated above, and believing that they are in conformity with the decisions heretofore made when the point has been presented, I am constrained to hold, that to restrain the collection of a tax upon personal estate, on the grounds alleged in the complaint herein, a court of equity has no jurisdiction.

Assuming it as conceded, that the question of jurisdiction was properly raised by the demurrers, (notwithstanding the suggestions above intimated,) the defendants may have judgment on the demurrers, with the usual leave to the plaintiff to amend (if he deems an amendment possible) on the usual terms.

Adjudged accordingly. (*a*)

---

(*a*) Upon appeal to the general term, the objection was insisted upon, that under the demurrers the question of jurisdiction could not be raised, and the objection was sustained without considering the merits. The court held, that

where the sole objection raised in a demurrer is, that the complaint does not
allege facts sufficient to constitute a cause of action, the demurrer cannot be
sustained on the ground of want of jurisdiction to grant the relief sought.
(See 15 How. Pr. R. 500, and 6 Abbott's Pr. R. 6.—REP.