### Van Rensselaer *vs.* Cottrell.

The only facts necessary to the jurisdiction of assessors are, in reference to real estate, that it be situated in the town or ward, and, in reference to personal property, that the owner be an inhabitant of the town or ward.

If lands assessed are situated within the town in which the assessors reside, the assessors have jurisdiction of the subject matter. And in making an assessment upon such lands they perform a judicial act, in a matter within the limit of their authority.

However much assessors may have erred in the performance of their duty, yet having jurisdiction of the subject matter, their error may be corrected, in a court of review, but will not render their proceedings void.

When an assessment roll is delivered to the supervisors, though uncorrected errors may appear upon its face, they are not authorized, on that account, to reject or disregard it, but must proceed to annex the tax list, and issue their warrant for its collection. It is equally the duty of the collector to execute the warrant; and both will be protected in the discharge of this duty. *Per* Harris, J.

Occupied lands, which are owned by persons who are not residents of the town or ward where they are situated, are liable to taxation. And the legislature having omitted to prescribe the manner in which the assessment of such lands shall be made, it is proper for the assessors to specify who is the occupant, as well as the name of the owner.

Either would be a sufficient compliance with the law. They may regard the occupant as owner, and assess the lands as owned by a resident of the town; or they may, without noticing the occupant, assess them as lands of a non-resident owner.

After a tax has been regularly assessed upon lands situated in a town other than that in which the owner resides, if the owner neglects or refuses to pay the tax, the collector of the town in which the lands lie will be justified in levying and collecting such tax of the goods and chattels of the owner.

*It seems* that the warrant attached to an assessment roll, if regular and legal on its face, is a perfect protection to the collector acting under it; and that he is not bound to look beyond it. *Per* Harris J.

This was an action of trespass for taking and selling the plaintiff's horse. The defendant was collector of the town of Sand Lake, in the county of Rensselaer, and justified the taking, under a collector's warrant issued in December, 1845. The trial was had before Justice Watson, at the Rensselaer circuit, in November, 1847. It appeared from the assessment

roll annexed to the warrant, and which was produced upon the trial, that the plaintiff had been assessed for various tracts and parcels of land in the town of Sand Lake, and among others about forty parcels of land *covered with water.* The first of these parcels is described as follows : "Land under water extending from the line of Brunswick in Sand Lake, to the Poestenkill school lot, eight acres, valued at $16." The second parcel is described as follows: "Land under water, *occupied* by Coonrod C. Cooper and used as a grist and saw mill privilege, two acres, valued at $400." These two instances will serve as examples of all the rest. They were all described in one or the other of these forms. The plaintiff paid to the collector all the taxes assessed upon his lands, except those under water. Before the seizure, he informed the defendant that he did not consider himself bound to pay these taxes, and should contest their validity. The warrant was in the usual form, and commanded the defendant to collect from the persons named in the assessment roll annexed thereto, the several sums mentioned in the last column, &c. The plaintiff resided in Greenbush. The judge charged the jury that the warrant attached to the assessment roll was regular and legal on its face ; and that being so, it was a perfect protection to the defendant who was acting under it, when he took the plaintiff's property, and that he was not bound to look beyond it ; that the warrant and assessment roll were not necessarily connected ; that, as to the defendant, the warrant and roll were to be considered and treated as distinct instruments, having no dependence on each other farther than to ascertain the amount of the tax and the names of the persons assessed ; that the warrant, if valid, controlled and protected him, even if the roll was irregular, or the assessment erroneously made. The counsel for the plaintiff excepted to the charge and instructions of the judge, and requested him to charge the jury that the assessments were illegal and void ; that the warrant and assessment roll were necessarily connected, and that not only the warrant but the assessment against the plaintiff, must be legal and valid on their face, to protect him. The judge refused so to charge, and the counsel for the

plaintiff excepted. The jury found a verdict for the defendant. A motion was made for a new trial upon a bill of exceptions.

*D. Buel, Jr.* for the plaintiff.

*D. L. Seymour*, for the defendant.

*By the Court*, HARRIS, J.   I think the only facts necessary to the jurisdiction of the assessors are, in reference to real estate, that it be situated in the town or ward, and in reference to personal property, that the owner be an inhabitant of the town or ward.   If the assessors should assume to assess lands lying in another town or ward, or to assess an inhabitant of another town, for personal property, though it might be situated in their town, the act of the assessors would unquestionably be void for want of jurisdiction.   In this case, the lands assessed were situated within the town of Sand Lake.   The assessors therefore had jurisdiction of the subject matter.   In making the assessment, they performed a judicial act, in a matter within the limit of their authority.   However much they may have erred in the performance of their duty, yet having jurisdiction of the subject matter, their error may be corrected in a court of review, but can not render their proceedings void. (*Bloom* v. *Burdick,* 1 *Hill,* 130.   *Weaver* v. *Devendorf,* 3 *Denio,* 117.   *Van Rensselaer* v. *Witbeck, decided at the present term.*(*a*)   *Van Rensselaer* v. *Hand, MS. opinion of Justice Wright, decided May term,* 1849.)   When the assessment roll is delivered to the supervisors, though uncorrected errors may appear upon its face, they are not authorized on that account to reject or disregard it, but it is the duty of the supervisors, notwithstanding such errors, to proceed to annex the tax list and issue their warrant for its collection.   It is equally the duty of the collector to execute the warrant.   Both will be protected in the discharge of this duty.

In the grants of lands in the manor of Rensselaerwyck, among other reservations, the original proprietor, as is well known, reserved to himself "*all lands under water.*"   These lands the

(*a*) *Post,* 133.

Van Rensselaer v. Cottrell.

assessors have, in the case before us, sought to subject to taxation. Whether they acted judiciously in doing so, is not a question involved in this decision. It is enough to justify the defendant, if we find that they did not transcend their jurisdiction.

The principal ground upon which the validity of the assessment is, in this instance, sought to be impeached is, that it appears, upon the face of the assessment itself, that some of the lands assessed were in fact *occupied* by other persons. I am inclined to think that this objection is not well taken in point of fact. The assessments are of " *lands under water*." In a majority of instances, the location of such land is merely given, but in other instances, it is described as land under water, *occupied* by some other person, whose name is given, for a saw mill or grist mill or some other kind of machinery. I think it quite obvious that it was the intention of the assessors, to distinguish between the land under water, and the water itself; and when they speak of land under water *occupied*, or *used*, (as it is sometimes expressed in the assessment roll,) as a mill privilege, it is merely intended to refer to the occupation or use of *the water*, as a mode of describing the land. It is to be kept in mind that the propriety of assessing a mill to its occupant and the land flowed by the dam of the mill to another person, as its owner, is not in question. The sole inquiry is whether the assessors exceeded their jurisdiction. But let it be assumed that the fair import of the terms used in the assessment is, that the thing assessed, the land under water, was occupied by the person named. In what respect, even then, have the assessors failed to comply with the requisitions of the statute ? The *first* section of the act (1 *R. S.* 389) declares that the owner of lands, when he occupies them himself, or in case they are wholly unoccupied, shall be assessed for them, if he resides in the same town or ward. The *second* section provides for a case where the owner resides in the same town or ward in which the lands are situated, but the lands are occupied by another person. In that case, the assessors are not bound to ascertain who is the real owner. If they know who is the owner, he may be assessed for the lands ;

or they may assess the occupant as the owner. The *third* section declares that *unoccupied lands,* not owned by a person residing in the ward or town where the same are situated, shall be assessed in the manner subsequently provided in the same act. These subsequent provisions contain minute directions for assessing such unoccupied lands. They are found in the 12th and 13th sections of the act. The 4th subdivision of the 13th section directs the assessors, in case a part of a tract of land, which is to be assessed by them under the provisions of that section, shall be settled and occupied by a resident of the town or ward, to except such part from their assessment of the whole tract, and assess it *as other occupied lands are assessed.* In all these provisions, it will be perceived, no directions are given as to the manner of assessing *occupied* lands which are owned by persons who are not residents of the town or ward where they are situated. Such lands are clearly liable to taxation, (1 *R. S.* 387, § 1,) and as the legislature have omitted to prescribe the manner in which the assessment of such lands shall be made, I can see nothing irregular or improper in the mode of assessment adopted in this case. The assessors, having no statutory guide, have seen fit to specify both the owner and the occupant. Either, I think, would have been a sufficient compliance with the law. They might have regarded the occupant as owner, and assessed the lands as owned by a resident of the town, or they might, without noticing the occupant, have assessed them as lands of a non-resident owner. That they have specified who are the occupants, as well as the name of the owner, certainly can not vitiate the assessment. By the 5th section of the title relating to the collection of taxes, (1 *R. S.* 398,) it is provided, that if any person shall neglect or refuse to pay any tax which shall be assessed in any ward or town, *upon any estate of such person,* situated out of the ward or town in which he shall reside, and within the county, the collector may levy and collect such tax of the goods and chattels of the person assessed in any ward or town, within the county, in which he shall reside. Here then, we have the express authority of the collector. A tax had been assessed, and, as we have seen, regularly assessed,

Van Rensselaer *v.* Cottrell.

upon the lands of the plaintiff situated in Sand Lake. The plaintiff was a resident of Greenbush, another town within the county. The plaintiff had neglected or refused to pay the tax. These facts were sufficient to justify the collector in levying and collecting the tax of the plaintiff's goods and chattels.

The only other objection taken to the form of the assessment is, that, in some instances, the lands are not sufficiently described. Whether they are or not, I am unable to say. But if it were conceded that the description of some of the lands was imperfect, it is a matter with which the plaintiff has nothing to do. The only object of a minute description of the lands is, to secure the collection of the tax by recourse to the land, in case it should not otherwise be collected. If this should fail through defectiveness of the description, it might enure to the advantage of the owner, but could not work his injury.

The judge, at the circuit, held that the warrant alone was a sufficient protection to the defendant. In this I think he was right. But concede that he was wrong in holding that the warrant and assessment roll were to be considered as distinct instruments, having no dependence on each other, further than to ascertain the amount of the tax and the names of the persons assessed. This would not entitle the plaintiff to a new trial. There was no question of fact to be decided. The charge, taking it most unfavorably to the plaintiff, amounted to nothing more than directing a verdict for the defendant; and to this he was entitled. The assessment roll, as well as the warrant, were legal. Whether, therefore, they are to be considered as together constituting the process, under which the defendant acted, or whether the warrant alone constituted such process, is wholly immaterial. In either case, the process was valid, and the defence was sustained. The motion for a new trial must therefore be denied.

New trial denied.