# SUPREME COURT.

The People *ex. rel.* William R. Stephens, Supervisor of Fremont, agt. Peter Halsey, County Treasurer of Steuben County.

A *tax payer*, who is also supervisor of a town, is a proper person to make application on 'behalf of the people, as relator, for a *mandamus* to compel the county treasurer of the county to issue his warrant to the sheriff of the county, commanding him to make the amount of tax assessed upon debts owing to non-residents of the town.

After the collector of a town has made his return in due form, as to the taxes imposed in that town upon debts owing to non-resident creditors remaining unpaid, the Statute (*Laws of* 1851, *Ch.* 371 § 6) makes it the duty of the county treasurer, after the expiration of twenty days from the return, to issue his warran t to the sheriff of the county, where the debtors reside, commanding him to make of the goods and chattels and real estate of such non-residents, the amount of such tax, &c.

This is a mere ministerial duty which the statute imposes upon the county treasurer, and peremptorily requires him to perform upon the return of the collector being duly made containing the necessary facts. He has no discretion to exercise in the matter, and is invested with no judicial functions whatever in regard to it.

But as *want of jurisdiction* may be alleged by way of answer, to any and all judicial proceedings, the county treasurer may challenge the jurisdiction of any or all of the officers and tribunals, to make the assessment or impose the tax thereon, and show, if he can, that the assessment and the tax are both, or either, contrary to the statute and void.

The assessors are not concluded by the *verified statement of the agents* of the non-resident creditors, of the amount due such creditors, but they may, in the exercise of their general powers and duties, go further and make inquiry for themselves from the debtors and other sources, and thus ascertain and determine to their own satisfaction the amount of such indebtedness from solvent debtors of the town, due to such non-resident creditors ; and whatever mistakes or errors the assessors may make in ascertaining such debts, they cannot be reviewed in this proceeding.

*Monroe General Term, March,* 1867.

*Before* James C. Smith, Welles *and* Johnson, *Justices.*

Notice for *mandamus* to Steuben special term, granted ; order affirmed by the general term of the 7th district, and appealed to this court.

B. F. Young, agent for Craven, Oswold & Estcourt, non-residents of the state, made out and delivered to the defendant, as treasurer, a sworn statement of the debts due to them in twenty-five different towns in Steuben county, as required by § 2 of the Laws of 1851, page 722. The treasurer delivered to the assessors of Fremont a copy of the statement duly certified as required by the law. In that statement the amount of debts due from persons in Fremont was stated at $6,505. The assessors, disregarding that statement, inserted in the roll for debts due from persons in Fremont, to Craven, and others, as non-resident creditors, the sum of $50,000, and a tax was charged upon that sum of $2,126 98. The collector returned the tax to the treasurer as unpaid. This is a motion, at the instance of the relator, who describes himself as supervisor and a tax-payer of Fremont, to compel the treasurer to issue his warrant, under § 6 of law of 1851, to the sheriff, to enforce the collection of the tax. The defendant declines to issue his warrant, for the reason that the tax is laid on an amount illegally assessed at $50,000 instead of $6,505.

GEORGE S. JONES and D. RUMSEY, *counsel for appellant, defendant.*

I. The relator has *no right* to this writ. The writ will not issue in cases of doubtful right, and the party will not be entitled to it unless he has a clear legal right to the relief asked for in the writ. (*Crary's N. Y. Pr.*, 272; *People* agt. *Sup's Chenango*, 1 *Kernan*, 563-574; *Same* agt. *Ransom*, 2 *Com.*, 490.)

And no case is found where either *certiorari* or *mandamus* has been allowed, where the remedy sought was common to every person alike, but they are allowed where the facts give to relator some specific right to a remedy on grounds peculiar to himself. So held in *Adriance* agt. *Sup's of Yew York* (12 *How. Pr. R.*, 226.)

The writ was refused because the facts were not such as affected the relator alone, but were in principle applicable to every person who was named in tax list. (*Church* agt. *Sup's Allegany*, 15 *Wend.*, 204.)

The same doctrine is fully held on demurrer to a complaint at New York general term, for the reason that a person could not sustain an action for an injury of a public nature, where it is no greater to him than to every other member of community *and that the people, by their attorney general, must prosecute the remedy.* (*Roosevelt* agt. *Draper et. al.*, 16 *How. Pr. R.*, 137.)

The same is held strongly in *Doolittle* agt. *Sup's, Broome* (18 *N. Y. R.*, 155); *Davis* agt. *Mayor of New York*, (14 *Id.* 506.)

The relator, as tax-payer, therefore has no right to this writ.

As supervisor of Fremont, he has no right to it, for the law nowhere gives him any such power over the treasurer or his acts, and the county treasurer is in no way amenable to any particular supervisor for his acts.

The board of supervisors, as such, may direct a suit against the treasurer, or his bail on his bond, for any failure to perform his duty. (1 *Revised Stat.*, 369, § 18.)

And it is to be sued on their order, or on a requisition from the comptroller. (1 *Revised Stat.*, 370, § 27.)

The relator in his capacity as supervisor, does not show any right of his own as supervisor, or of the town of Fremont, which has been affected by the refusal of the treasurer, except as the right of every tax-payer of the county is affected by such refusal.

He does not pretend that he has not received the amount which he, as supervisor, was to receive from the collector; if he did so claim, it should appear affirmatively.

The opposing affidavits show such amount was paid.

The town of Fremont is not chargeable with any loss of tax referred to which may be sustained by the default of

the treasurer (1 *Revised Stat.* 419§ 5) ; and by that section the towns are chargeable with losses sustained by default of collectors only, while the losses which result from default of treasurer, are chargeable on the county at large.  (1 *Revised Statutes*, 419, § 5.)    And in every case of loss chargeable on the county, every tax-payer of the county has as much right as relator to the writ, in either capacity in which he appears.    He has nothing to do with the collector of taxes, or control over the treasurer, in either capacity.

The assessment made by the assessors of Fremont against Craven, Oswold & Estcourt for the 50,000 was entirely illegal, and the assessors acted without jurisdiction in making the same.

II. If *debts due to non-residents* were taxable under the general tax laws of the state (1 *Revised Statutes*, 387, § 1), which declares that all lands and personal estate within this state shall be liable to taxation, then by § 5, p. 389, it is to be taxed only in the *town or ward* in which the person assessed, or trustee, guardian, executor, administrator, having charge ot the same, resides.

By the Laws of 1851, chap. 176, p. 332, the 5th section above cited was amended by inserting the word agent before trustees, &c., still leaving the personal property to be assessed in the town where the trustee, &c., having charge of it, reside.

The agent in this case resided in Bath, and under these statutes the assessors of Fremont had nothing to do with the personal property.    (*People* agt. *Com'rs of Taxes*, 23 *N. Y. R.*, 224.)

The assessment in this case was not made against the agent, but against Craven and others, who were non-residents of the United States.

The only power, therefore, the assessors of Fremont have over debts due from citizens of their several towns to non-residents, is derived from chapter 371 of the Laws of 1851. (*Session Laws* 1851, *p.* 721.)    And whether this power be

derived from the law of 1851, as an original grant of power, or whether that law be deemed a restriction of the power of assessors over debts due to non-residents, they can exercse it only in the way authorized by the law of 1851. It is, however an original grant of power, for before that law, the assessors had no jurisdiction of, or control over the personalty of those not residing in their town

By section two of that law, any agent of a non-resident creditor residing in any county of this state, is required, on or before the 25th day of July, to furnish to the county treasurer of each county where the debtor resides, a true and accurate amount of the debts which were owing to his principal, on the first day of January preceding, which was to be verified by his oath.

By § 3, a penalty of $500 is imposed on the agent for not complying.

By § 4, the county treasurer, on receiving such statement, shall immediately make and transmit to the assessors of the several towns of his county in which any such debtor re-resides, an abstract or copy of so much of said statement as relates to the town of such assessor, with the name of such creditor.

By § 5, the assessor receiving such abstract or statement from the county treasurer shall, *within the time in which they are now required by law* to complete their assessment roll, enter thereon the *name of each non-resident debtor*, and the aggregate amount due him in such town on the first day of January preceding, in the same manner as other personal property is entered in said town.

The other sections of the law provide for the treasurer issuing his warrant in case of the non-payment of the tax assessed against such debts.

Under this law, B. F. Young, agent in Bath, Steuben County, made to the county treasurer the statement required, setting out the debts due Craven and others, in twenty-five of the towns in that county, and the county

treasurer served a copy of such statement, duly certified, upon the assessors of Fremont.

The assessors, instead of inserting on their roll the sum of $6,505 as the debts due in Fremont, disregarded such statement and inserted on the roll the gross sum of $50,000 as the the amount of such debts.

It is evident the statute intended, in cases where there was no agent of a non-resident creditor, the statement of the amount of debts made by him was to be taken as the proper amount subject to taxation in the several towns ; for,

1. The peculiar provisions of the 5th, section that the assessors in receiving such abstract from the county treasurer containing the names of non-resident creditors and the amount due them in such towns, are to complete their roll within the time required by law, by entering thereon the names of such non-residents, and the aggregate due them in such town in the same manner as other personal property is entered upon said roll.

Such roll is to be completed by the first day of August. (1 *Revised Statutes, 4th Ed.*, 718, § 17.)

The report of the agent is not required to be made to county treasurer until the 25th of July. It is then to be sent to assessors, who are then and *not till then*, to complete the roll by entering the name of such non-resident and the amout due him in that town, &c.

To what name and amount does this refer ? Evidently, to the man and amount contained in the abstract so received from the county treasurer, for there is no provision for learning these facts in any other way. And all this is to be done between the 25th of July and the first day of August—only six days. They are only required to delay completing their roll to receive this report.

2. The report thus made by the agent, furnishes precisely the same evidence of the amounts subject to taxation in that town which in 1851 would have been necessary to

compel the assessors, on appeal day, to reduce the assessment of a resident for personal estate; for,

By 1 *Revised Statutes*, 383, § 15, which continued to be the law down to 1851, it is expressly provided that if a party assessed for personal property made his affidavit of the value of his personal estate, it shall be the duty of the assessor to value the personal estate at the amount specified in the affidavit, and no more.

The legislature evidently intended to require the same evdence in this case, and no other.

3. There is no other provision made by law for obtaining the names of non-resident creditors, or the amount of debts due to them in the several towns, except the returns of the agents, nor does it seem to contemplate any other way.

4. We know as matter of history, the object of the legislature in the law of 1851 was, to reach and tax debts due to non-resident creditors, owners of estates scattered in several towns, and to give to each town the benefit of taxation on the debts due in such town.

This is apparent by reference to the law of 1833 for taxing debts due to non-residents, which was the first law for that purpose, and was repealed in 1837. (*Laws of* 1833, *p.* 355.)

The second section of the act requires the assessors to make diligent inquiry to ascertain debts due to non-residents, the names of the creditors of debtors, the amount of each debt, including the town and county of residence of such debtors. By § 3, assessors were allowed, without charge, to search clerks' and registers' offices to find such debts.

By § 4, assessors were authorized to examine any person on oath, touching such debts, but this section *shall not extend to those cases where lists of debts shall have been furnished by the agent of any non-resident creditor, according to the provisions of this act.*

And the sixth section requires every agent of a non-resident creditor to furnish to the county treasurer, under oath,

a list of all debts under his control, with the names, and places of residence of debtor, &c.

All the provisions of the act of 1833, for learning from other sources the existence of such debts, except the returns of agents, are omitted in the act of 1851, manifestly for the reason that the oath of a responsible party is to be relied on, rather than a loose inquisition.

By the act of 1833, elaborate provision is made for returns of debts found in one town, due from residents of other towns, to such other towns in the state, so that all may be reached in the proper town, all of which are omitted in the law of 1851.

From this fact, it is evident the legislature intended to rely, only and solely on the sworn statement of the agents, and that when such statement was made, it was to be taken as true..

5. By § 4 of law of 1851, it is manifest the legislature contemplated the report from the agent would embrace debts due in more than one town. In this very case, the *report of the agent* embraces debts due in twenty-five different towns in Steuben County.

Is it to be presumed the legislature intended to require the agent to appear in twenty-five different towns on *same day* of appeal, to rectify as many erroneous assessments, or did they intend in the first instance to provide the same evidence should be delivered to the county treasurer as would be required on appeal to correct the assessment? Here in the statement the assessors have the same evidence as would then have compelled them to reduce the assessment.

Any other construction would practically take away the right of appeal.

If, therefore, our construction of the law be correct, the assessors have no jurisdiction over the debts due to non-residents from persons in their town, except as derived from the law of 1851, and in the manner prescribed in that law,

and their assessment of these debts otherwise than as therein provided, is void.

The acts of assessors without jurisdiction are void. (16 *Barb.*, 249–50.)

III. The assessment of $50,000 is in fact for a sum entirely exceeding any amount for which Craven and others, non-resident creditors are properly chargeable.

This, however, if the assessors had the right to put down such sum as they chose, is not material, except for the purpose of showing how important it was to give to the report of the agent full faith, and bind the assessors by it, and not turn non-resident creditors over to popular prejudice.

Debts due to non-residents are subject to taxation in the same manner and to same extent as personal estate of residents. (*Act of* 1851, § 1.)

That term means, " debts due from solvent debtors "—no others are included. (1 *Revised Statutes 4th Ed.* 714 § 3.)

The assessor has made a list of what he calls debts due to Craven and others, amounting $59,400 ; swearing at the same time he believes the whole amount due them in Fremont is over $75,000. Why then has he omitted the $74,000 of debts found ; or the $25,000 of debts believed to be due above the sssessment ?

But the agent of the creditors who ought to know, swears that of the persons named in the moving papers as debtors, they have no contracts, and no evidences of debt against them exist in favor of the alleged creditors to the amount, on those persons claimed to be debtors in the moving papers of $23,100.

Whether they are of the number mentioned in moving papers as having assigned contracts, we do not know. We only know we have no liability from them to us, or means of collecting from them. If, however, they hold contracts by assignment, Craven, &c., have no legal claim on them. (40 *Barb,,* 225.)

Another portion of those named in moving papers, have not paid a dollar since 1860, and long before that time. Others have been sued and could not be collected, and others are insolvent, and creditors dare not sue for fear of paying their own costs.                    $24,600

Another portion of alleged debts are over-stated to extent of                    3,012

In all overstated                    $49,702

If to these we add the $6,505 returned by the agent as subject to taxation, it effectually disposes of the strong array of names and debts which are spread in the moving papers. And the whole case as it appears from the papers, shows the manifest injustice of adopting any other mode of fixing the amount of the assessment than the one we contend for.


HAKES & STEVENS, *counsel for respondent, the relator.*


I. The relator being one of the people, a citizen and tax-payer of the town of Fremont, has a right to this writ. (*People* agt. *Collins,* 19 *Wend.* 55–56; 18 *How. Pr. R.,* 463.)

II. The assessors in making the assessment act judicially, and if they have jurisdiction of the subject matter, their unreversed decision cannot be questioned collaterally. (7 *Barb.,* 129–137 ; 19 *Wend.,* 61; 1 *Caines,* 92.

In the case of *Albany & West Stockbridge Railroad Co.* agt. *Town of Canaan* (16 *Barb.,* 250), Judge HARRIS says:

" Though it could be demonstrated that the assessors had erred, and that egregiously in their judgment, no tribunal has been endowed with power to correct such error. Like the verdict of a jury, if founded on correct principles, it must stand, however much its conclusions may surprise us." (*Vose* agt. *Willard,* 47 *Barb.,* 320; 1 *Kern.* 573 ; *Parish* agt. *Golden,* 35 *N. Y. R.,* 462.)

Had the assessors jurisdiction ?

That debts existed of the character described in § 1, of chap 371 of Laws of 1851, liable to taxation in the *same manner* " and to the *same extent* as the personal estate of citizens of this state," is not disputed.

This imposed an official duty upon the assessors, calling for the exercise of the judgment and discretion of the assessors to determine upon their oaths the *manner* and *extent* of the assessment of that kind of property.

Except that it is claimed that the assessors disregarded the " statement of B. F. Young, agent," no question is raised as to the regularity of any of the proceedings in making the assessment or levying the tax, or in making the return by the collector required by § 6 of said chap. 371, or any other step in relation to the tax. The presumptions of law are in favor of the regularity of all the proceedings, and the motion papers show *prima facie* the regularity of all the proceedings, unless the assessors erred in reference to the particular irregularity complained of. It follows then that the principal questions presented are :

1st, As to the office which the affidavit and statement perform, required to be made by the agent, under § 2 of that act.

2d, As to whether the statement as verified was a compliance with that statute.

3d, The effect of an omission to object on the day for reviewing the assessment provided by statute when the question is raised collaterally after that time.

*a.* As to the first inquiry, § 1 provides that *all debts* of the description mentioned " shall be liable to taxation," &c., without any contingency. If the office of the verified statement of the agent is jurisdictional, § 2 provides for a contingency which might arise if no such agent resided in this state, when such " debts " would necessarily escape taxation.

Section three provides for another, to wit: The neglect or refusal of such agent to make the statement, and the payment of the penalty, if required, to the county. The statute requiring the statement is in its nature directory, except so far as it imposes a penalty for its violation. It is auxiliary to, or in aid of the assessors, but not to control their official duty in determining the *extent* of such assessment. If the construction which is claimed by defendants counsel is to be given to the words " the assessors on *receiving* such abstract," &c., "shall," &c., in § 5, it would follow that upon the happening of the contingencies above named, that such "debts" would escape taxation. Such a construction is not consistent with the broad terms used in the first section, providing that *all debts* are liable to taxation. Nor is it consistent with the language which follows those words in § 5, viz: "Shall within the time in which they are required by law to complete their assessment roll, *enter* thereon," &c., "the AGGREGATE AMOUNT DUE him in such town, in the same manner other personal property is entered cn the roll."

If the legislature intended such a construction they would have used instead of the words "amount due," the words, "*appearing to be due*," by such statement, or some equivalent expression, clearly showing a legislative intent of making the agents of non-residents the *assessors* of their principals' money, instead of the officers created by law for that purpose. By § 10 of Laws of 1833, on page 358, now repealed, the assessors were directed to place the amount on the assessment roll, "by entering in the same the debts. *appearing* by such lists to be owing," &c. It is evident that the legislature intended by the change of the phraseology to impose upon the assessors, instead of the agent of the non-resident, the duty of the assessment of such property.

*b.* As to the second inquiry, it is claimed that the statement as verified and forwarded to the treasurer in this case,

is a clear evasion, for the reason that the affidavit contains only the agent's legal opinion as to the amount of debts *liable to taxation*, one upon which he could not be indicted for perjury, if he erred in judgment of that question of law. If not a compliance, it is to be treated as if he had made no affidavit at all. The assessors did more than was required by law of them, in taking the pains to notify the agents of these non-residents that they had so assessed them in order that no one could complain of any want of fairness on their part in disregarding the statement, and making the assessment which they did make.

*c.* In omitting to appear before the board of assessors on the day for review, viz: on the third Tuesday of August, (*See Statutes at Large, vol. 1 p. 365*), and there fairly submitting to such an examination under oath as the law required, if these non-residents felt aggrieved, it is claimed they waived the right afterwards to question the amount assessed. In *Wheeler* agt. *Mills*, (40 *Barb,*, 646), Mr. Justice BROWN, in giving the opinion of the court, says: "For I know of no other tribunal, and of no other time when and where a mistake in the kind of property, or an over estimate of its value can be corrected, except the board of assessors, and at the time to be named in the notice for that purpose." It was not only binding upon them, but at all events upon the collector in collecting the amount of tax, and upon the treasurer in issuing his warrant, and the sheriff and all other officers and persons, when the question arises collaterally. Hence it is insisted that the order of the general term should be affirmed with costs.

*By the court,* JOHNSON, J.: The first objection made to this application on the part of the defendant is, that the relator is not the proper party to make it, he having no interest in the matter, other than any other citizen of this state. But this is strictly a question of public concern, and not a mere matter of private interest. It relates to the col-

lection of the state and county tax : to the money of the people, for the maintenance and support of their government, in which each citizen has an equal and common interest. In such a case any citizien may make the application. (*The People* agt. *Collins*, 19 *Wend.* 56.) The people, in such cases are the real party, and must necessarily act through individual information. Where private interests only or chiefly are concerned, and the people are only the nominal party, the relator who is the real party, must show that he, as an individual, is entitled to the relief sought. The relator here demands the relief, not for himself, but for the public ; and being an inhabitant of the town of Fremont, and a tax-payer, as well as the principal officer thereof, is manifestly a proper person to appear as relator.

The return of the collector of the town of Fremont, showing that the taxes imposed in that town upon the debts owing to these non-resident creditors remained unpaid, appears to have been made in due form. The statute is such cases makes it the duty of the county treasurer, after the expiration of twenty days from the return, to issue his warrant to the sheriff of the county, where the debtors reside, commanding him to make of the goods and chattels and real estate of such non-resident, the amount of such tax, &c. (*Sess. Laws of* 1851, *Chap.* 371, § 6.) This is a mere ministerial duty which the statute imposes upon the treasurer, and peremptorily requires him to perform upon the return of the collector being duly made containing the necesary facts. He has no discretion to exercise in the matter, and is invested with no judicial functions whatever in regard to it. He has no power nor authority to sit in judgment upon the acts of the assessors of the town, or upon those of the board of supervisors of the county. The statute has not constituted that officer the tribunal for challenging thir proceedings or for reviewing and correcting their mistakes or errors of judgment. Nor can he in answer to an application for a writ of *mandamus* against him for refusing to perform his

People agt. Halsey.

duty, bring their proceedings into review for the purpose of
establishing mistakes or errors in such proceeding. He may,
however, in such a case, I apprehend, challenge the juris-
diction of any or all of these officers and tribunals, to make
the assessment, or impose the tax thereon, and show if he
can that the assessment and the tax are both or either con-
trary to the statute, and void.

Want of jurisdiction may, I suppose, be alleged by way
of answer to any and all judicial proceedings. That ground
of defense is alleged and insisted upon in answer to this
application, and presents the only question worthy of seri-
ous and careful consideration. The precise question is
whether the assessors are concluded by the verified state-
ment of the agent of the non-resident creditor, made in the
prescribed form, of the amount of debts due such creditor on the
first of January preceding, as it appears from the abstract,
a copy furnished and transmitted by the county treasurer, or
whether they may go further and make diligent inquiry for
themselves from the debtors, and other sources, and thus
ascertain the amount of such indebtedness from solvent
debtors, provided they do not give full credit to the state-
ment furnished ? The first section of the act before referred
to, makes all debts owing by inhabitants of this state, to
persons not residing within the United States, for the purchase
of real estate, personal property within the town or county
where the debtor resides, and liable to taxation, "in the
same manner and to the same extent as the personal estate
of citizens of this state."

The second section provides that the agent of the non-
resident creditor, if one resides in this state, shall furnish to
the county treasurer of the county where the debtor resides,
the true and accurate amounts of such debts, which were
owing on the first day of January preceding, verified by
his oath. By the fourth section the county treasurer, on re-
ceiving such statement, is required to make out and transmit
to the assessors of the several towns in his county in which

any such debtor resides, an abstract or copy of so much as relates to the town of the assessor, with the name of the creditor.

The fifth section requires the assessors, on receiving such abstract or statement, and within the time required by law to complete their assessment roll, to "enter thereon the name of such non-resident creditor, and the aggregate amount due him in such town on the first of January pre-ceding, in the same manner as other personal property is entered on said roll." It is claimed in behalf of the defend-dant, that the "amount due," which the assessors are re-quired to enter upon their roll, must be taken from the statement furnished, and that the assessors are limited to that alone, and cannot go beyond it to any other source, to ascertain the amount due. There is no such restriction or limitation in terms, and I am clearly of the opinion there was no such in the intention of those who framed and en-acted the statute. If such had been their intention, they would have been likely to have expressed it in some form, and not to have left it to uncertain inference or conjecture.

If they had designed to change the duties of the assessors in regard to this species of property, they would, as it seems to me, have expressed such design plainly, and clearly. In-stead of this they have not subjected this species of prop-erty " to taxation in the same manner and to the same ex-tent " as other personal estate, but have required the asses-sors to enter the " amount due " upon the assessment roll " in the same manner as other personal property is entered." Not the amount according to the statement, but the amount actually due, whieh is taxable, according to the general provisions of law, which is, " debts due from solv-ent debtors." (1 *Revised Statutes*, 388 § 3.)

The general duties of assessors in ascertaining the amount of real and personal property subject to taxation in the respective towns, is prescribed by statute. " They shall pro-ceed to ascertain by diligent inquiry the names of all the

People agt. Halsey.

taxable inhabitants in their respective towns, *and also all the taxable property*, real or personal, within the same." (1 *R. S.*, 390, § 8.)

They are required to ascertain by diligent inquiry, all the taxable property within the town, personal as well as real. No good reason can be shown why the assessors should be precluded from making inquiries in regard to foreign creditors any more than resident ones, and as no limitation is imposed in terms, it is impossible, I think, for the court to say judicially that one was intended. The obvious design in requiring the agent to make the statement provided for, as it seems to me, was to aid the assessor in the pursuance of his duty, and not to put the agent in his place, to assess his principal. The assessors may, doubtless, take the statement if they are satisfied with its correctness, as in most cases they will be quite likely to be; but if they are not satisfied with the statement, it is their plain and clear duty to go further and make " diligent inquiry," for the purpose of ascertaining the true state of the case. Their duties are to a certain extent judicial in their character, and these duties are not limited to domestic property-holders.

The conclusion arrived at: the assessors were not con-concluded by the statement of the agent, but had the right, in the exercise of their general duties and powers as assessors to go beyond, is decisive of this motion. If they had jurisdiction to make further inquiries and investigations for the purpose of ascertaining and determining to their own satisfaction, the amount of debts due from solvent debtors to those foreign creditors, within their town, whatever may have been their mistakes and errors, they cannot be brought in question and reviewed here. Conceding that the assessors mistook mere equitable claims for " debts," and misjudged in regard to the solvency of those who were debtors, within the sense and meaning of the statute, it cannot affect the validity and conclusiveness of the tax. Jurisdiction being established, the tax, founded upon the assessment,

has all the force and vigor of a judicial sentence impart-ing absolute verity, notwithstanding such mistakes and errors. (*Van Rensselar* agt. *Cottrell*, 7 *Barb.*, 127 ; *Same* agt. *Whitebeck*, *Id.*, 133 ; *Albany & West, Stockbridge R. R. Co.*, agt. *Town of Canaan*, 16 *Barb.*, 244.)

There is no ground for supposing that the assessors were guilty of fraud, or were actuated by any unlawful designs in going beyond the statement to ascertain the amount of debts owing. As the tax in question cannot be questioned collaterally in the manner in which the defendant has sought to do it, the case should, perhaps be rested here. But as this is an important question, and may operate as a prece-dent in other similar cases, some observations, *obiter*, of the meaning and force of the statute of 1851 may not be altogeth-er inappropriate, though I do not intend to go beyond the points argued before me. The term " debts," in the stat-ute, is to be understood in its usual legal sense, and means nothing more nor less than sums of money due from inhab-itants of the state, to the non-residents mentioned, by cer-tain and express agreements or judicial sentence, and for the purchase of real estate. Primarily, it looks to the rela-tion of vendor and purchaser, by contract valid in law, and to no other relation. A mere assignee of a contract is in no legal sense the debtor to the vendor, unless he has expressly undertaken to pay the debt by some valid instrument or promise. In the latter case, he may, legally speaking, be regarded as the debtor of the vendor for the purchase of real estate. This, of course, must be understood to em-brace causes only where the assignment is authorized and valid, of itself, or is rendered valid by some subsequent act or assent of the vendor, binding in law.

Debts barred by the statute of limitation would not fall within the statute, nor would mere equitable claims, where no legal relation of debtor and creditor exist. One person may hold a contract by assignment, without being the debtor to the vendor, in any such sense as the statute con-

templates. If he is mere assignee, the original contractor is still the only debtor to the vendor, and unless he is a resident of the town, and solvent, the debt cannot be assessed in such town.

A "solvent debtor" is a person who has sufficient property to pay all his debts, and against collection of such debts may be enforced, out of his property, by due process of law.

The object of this statute, plainly, was not to discriminate against foreign creditors, but to subject their personal property within this state, justly and fairly, to taxation, in the same manner and to the same extent as the personal estate of citizens of the state. And in this spirit and no other should assessors act in the discharge of their duty in such cases. The writ must therefore be granted. And inasmuch as the assessment and tax were fair upon their face, and the defendant has no personal interest in the question, but has voluntarily undertaken, outside of his official duty, to defeat the tax, and prevent its collection, he must be charged personally with the costs of this proceeding.

NOTE.—This case was carried to the court of appeals, and there decided by affirmance September term, 1867 (*reported*, 37 *N. Y. R.*, 344). But that court did not pass upon the important question, whether the statement furnished by the agent to the assessors was conclusive as to the amount. to be taxed, Judge JOHNSON's opinion, above, therefore stands as the law upon that point. *Rep.*